ANNETTE L. HURST (Bar No. 148738)
ELISABETH R. BROWN (Bar No. 234879)
HELLER EHRMAN LLP
333 Bush Street
San Francisco, CA  94104-2878
Telephone:  +1.415.772.6000
Facsimile:   +1.415.772.6268
E-mail:       Annette.Hurst@HellerEhrman.com
                  Elisabeth.Brown@HellerEhrman.com

Attorneys for Plaintiff
DAVID JAMES DUNCAN

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAVID JAMES DUNCAN,<br><br>                                    Plaintiff,<br><br>        v.<br><br>THOMAS A. COHEN d/b/a HAMMERMARK PRODUCTIONS, KRISTI DENTON COHEN d/b/a PELOTON PRODUCTIONS, and SIERRA CLUB BOOKS,<br><br>                                    Defendants. | Case No.: 3:08-cv-02243-BZ<br><br>**PLAINTIFF DUNCAN'S OPPOSITION TO MOTION TO DISMISS COMPLAINT AND SPECIAL MOTION TO STRIKE UNDER THE ANTI-SLAPP STATUTE**<br><br>Date:   July 23, 2008<br>Time:  10:00 a.m.<br>Room: Courtroom G, 15th Floor |

Heller
Ehrman LLP

# TABLE OF CONTENTS

**Page**

INTRODUCTION AND SUMMARY OF ARGUMENT.................................................... 1

STATEMENT OF FACTS ................................................................................................. 2

    A.   Summary Of Background Facts. ...................................................................... 2

    B.   Claims For Relief. ............................................................................................ 6

ARGUMENT ...................................................................................................................... 7

I.   THE COHEN DEFENDANTS' SPECIAL MOTION TO STRIKE
    MUST BE DENIED............................................................................................... 7

    A.   California's Anti-SLAPP Statute Does Not Apply To Federal
        Claims Pending In Federal Court. .................................................................. 8

    B.   The Anti-SLAPP Statute Does Not Apply To Duncan's State
        Law Claims. .................................................................................................... 9

        1.   The State Law Claims Do Not Arise Out Of Speech......................... 9

        2.   The State Law Claims Are Based Upon A Private
            Dispute, Not A Matter Of Public Interest. ...................................... 11

    C.   Cohen's Declaration Demonstrates That Duncan Has a
        Probability of Success on the Merits of His Claims. ................................... 12

    D.   The *Erie* Doctrine Prohibits Application Of Section 425.16 In
        The Fashion Proposed By The Cohen Defendants. ..................................... 14

II.   THE COHEN DEFENDANTS MOTION TO DISMISS LIKEWISE
    SHOULD BE DENIED......................................................................................... 15

    A.   Duncan Has Adequately Pled Copyright Infringement. ............................. 16

        1.   Duncan Has Standing To Sue For Infringement.............................. 16

        2.   The Consent Judgment Does Not Bind Duncan. ............................. 18

        3.   The Statute Of Limitations Does Not Bar The
            Copyright Infringement Claim.......................................................... 19

    B.   Duncan Adequately Pled His Declaratory Relief Claim............................. 20

    C.   DUNCAN'S FRAUD CLAIM WAS ADEQUATELY PLED.................. 20

i

Heller
Ehrman LLP

1.  Duncan Satisfied the Particularity Requirements for
    Pleading Fraud. ................................................................. 20

D.  Duncan Adequately Pled His Claim For Conspiracy To
    Defraud. ............................................................................ 23

E.  The Motion To Dismiss The False Advertising And Right Of
    Publicity Claims Premised Upon The Defense Of The Letter
    Agreement Is Absurd. ....................................................... 23

CONCLUSION ......................................................................................... 24

Heller
Ehrman LLP

PLAINTIFF'S OPPOSITION TO MOTION TO STRIKE AND MOTION TO DISMISS
CASE NO.: 3:08-CV-02243-BZ

# TABLE OF AUTHORITIES

**Page**

## Cases

*American Builder's Assoc. v. Au-Yang*,
  226 Cal. App.3d 170 (1990) .................................................................. 18

*Balistreri v. Pacifica Police Dept.*,
  901 F.2d 696 (9th Cir. 1988) ................................................................ 15

*Bell Atlantic v. Twombly*,
  127 S. Ct. 1955 (2007) ........................................................................ 15

*Bulletin Displays, LLC v. Regency Outdoor Adver., Inc.*,
  448 F. Supp.2d 1172 (C.D. Cal. 2006) ............................................. 8, 14

*City and County of San Francisco v. Philip Morris, Inc.*,
  957 F. Supp. 1130 (N.D. Cal. 1997) ..................................................... 20

*City of Cotati v. Cashman*,
  29 Cal. 4th 69 (2002) ................................................................. 7, 9, 10

*City of Vista v. Robert Thomas Sec., Inc.*,
  84 Cal. App. 4th 882 (2000) ................................................................ 22

*Condit v. National Enquirer, Inc.*,
  248 F. Supp.2d 945 (E.D.Cal. 2002) .................................................... 13

*Cummings v. Bullock*,
  367 F.2d 182, 186 (9th Cir. 1966) ....................................................... 13

*Davis v. Blige*,
  505 F.3d 90 (2d Cir. 2007) ................................................................... 14

*E-Fab, Inc. v. Accountants, Inc. Servs.*,
  153 Cal. App. 4th 1308 (2007) ............................................................ 22

*Franco v. Selective Ins. Co.*,
  184 F.3d 4 (1st Cir. 1999) ................................................................... 19

*Gawara v. U.S. Brass Corp.*,
  63 Cal. App. 4th 1341 (1998) .............................................................. 21

*Globetrotter Software, Inc. v. Elan Computer Group, Inc.*,
  63 F. Supp.2d 1127 (N.D. Cal. 1999) .................................................... 9

*Hall v. Time Warner, Inc.*,
  153 Cal. App. 4th 1337 (2007) ............................................................ 11

*Honig v. San Francisco Planning Dept.*,
  127 Cal. App. 4th 520 (2005) .............................................................. 22

*Howard Jarvis Taxpayers Ass'n v. City of La Habra*,
  25 Cal. 4th 809 (2001) ........................................................................ 22

*In re Bah*,
  321 B.R. 41 (9th Cir. BAP 2005) ........................................................... 8

*Kearney v. Foley and Lardner*,
  Civ. No. 05-CV-2112-L(LSP), 2008 WL 761089  (S.D. Cal. Mar. 18, 2008) .............. 8

Heller
Ehrman LLP

*Kidron v. Movie Acquisition Corp.*,
40 Cal. App. 4th 1571 (1995) ................................................................... 23

*Kinderstart.com LLC v. Google, Inc.*,
No. C 06-2057 JF (RS), 2007 WL 831806 (N.D. Cal. March 16, 2007) ..................... 11

*Kourtis v. Cameron*,
419 F.3d 989 (9th Cir. 2005) ............................................................ 16, 19

*Metabolife Int'l, Inc. v. Wornick*,
264 F.3d 832 (9th Cir. 2001) ........................................................ 9, 12, 14

*Morris v. Castle Rock Entm't., Inc.*
246 F. Supp.2d 290 (S.D.N.Y. 2003) ........................................................ 17

*Navellier v. Sletten*,
29 Cal. 4th 82 (2002) ..................................................................... 12

*Pareto v. F.D.I.C.*,
139 F.3d 696 (9th Cir. 1998) .............................................................. 15

*Parks Sch. of Business v. Symington*,
51 F.3d 1480 (9th Cir. 1995) ............................................................. 15

*Purviance v. Shostak*,
90 Cal. App.2d 295 (1949) ................................................................ 18

*Quelimane Co. v. Stewart Title Guar. Co.*,
19 Cal. 4th 26 (1998) ..................................................................... 23

*Rezec v. Sony Pictures Entert.*,
*Inc.*, 116 Cal. App. 4th 135 (2004) ...................................................... 10

*Scheuer v. Rhodes*,
416 U.S. 232 (1974) ...................................................................... 15

*Semegen v. Weidner*,
780 F.2d 727 (9th Cir. 1985) ............................................................. 20

*Skaff v. Meridien North America Beverly Hills, LLC*,
506 F.3d 832 (9th Cir. 2007) ............................................................. 16

*Sonoma Foods, Inc. v. Sonoma Cheese Factory, LLC*,
No. C 07-00554 JSW, 2007 WL 2122638 (N.D. Cal. July 23, 2007) ..................... 8, 12

*Standard Realty & Dev. v. Ferrera*,
151 Cal. App.2d 514 (1957) ............................................................... 18

*Summit Media LLC v. City of Los Angeles*,
530 F. Supp.2d 1084 (C.D. Cal. 2008) ................................................... 8, 9

*Swierkiewicz v. Sorema N.A.*,
534 U.S. 506 (2002) ...................................................................... 16

*United States v. Ritchie*,
342 F.3d 903 (9th Cir. 2003) ............................................................. 16

*Verizon Delaware, Inc. v. Covad Commc'ns, Co.*,
377 F.3d 1081 (9th Cir. 2004) ............................................................ 15

*Worldwide Church of God v. Philadelphia Church of God, Inc.*,
227 F.3d 1110 (9th Cir. 2000) ............................................................ 17

Heller
Ehrman LLP

PLAINTIFF'S OPPOSITION TO MOTION TO STRIKE AND MOTION TO DISMISS
CASE NO.: 3:08-CV-02243-BZ

1

## Statutes

2

17 U.S.C.
   § 106 ................................................................................................................ 2
   § 204(a) ......................................................................................................... 14

Cal. Civ. Code
   § 2330 ..................................................................................................... 18, 21
   § 338(d) ....................................................................................................... 22
   § 343 ........................................................................................................... 22
   § 425.16 ................................................................................................. *passim*
   § 425.16(a) ............................................................................................ 11, 12
   § 425.16(b) ................................................................................................. 11
   § 425.16(b)(1) .............................................................................................. 7
   § 425.17(c) ................................................................................................. 11
   § 435.17(d)(2) ............................................................................................ 11

3

4

5

6

7

8

9

## Rules

10

Fed. R. Civ. P.
   § 8(a)(2) ...................................................................................................... 15
   § 9 ................................................................................................................. 2
   § 9(b) ........................................................................................................... 20
   § 12(b)(6) ......................................................................................... 2, 15, 16
   § 15(a) ......................................................................................................... 15
   § 56(f) .................................................................................................... 14, 15

11

12

13

14

## Other Authorities

Cal. Prac. Guide Civ. Pro. Before Trial Ch. 7(II)-E ........................................ 10

15

16

17

18

19

20

21

22

23

24

25

26

27

Heller
Ehrman LLP

28

PLAINTIFF'S OPPOSITION TO MOTION TO STRIKE AND MOTION TO DISMISS
CASE NO.: 3:08-CV-02243-BZ

## INTRODUCTION AND SUMMARY OF ARGUMENT

Plaintiff David James Duncan ("Duncan") has filed this lawsuit in order to stop the improper and unauthorized exploitation by Defendants Cohen and Denton Cohen (collectively, "the Cohens" or "the Cohen Defendants") of his novel *The River Why*. Although Defendants apparently seek to demean Duncan's passion by urging it be used against him, an artist who learns he has been defrauded and improperly deprived of his rights has every reason emphatically to seek justice. For all of the reasons detailed in the Complaint, Duncan is entitled to stop the Cohens from any further efforts to exploit him and his work.

In response to the Complaint, the Cohens bring ill-conceived motions to strike and to dismiss, which should be denied for numerous reasons. As to the Special Motion to Strike, the Court should deny the motion under California's anti-SLAPP law because the Cohen Defendants have wholly failed to make a prima facie case as to each claim for relief demonstrating that each such claim comes within the application of the statute. Moreover, when each claim is examined, it is apparent that the statute does not apply. As to the first and seven claims brought under the Copyright Act and Lanham Act, the Ninth Circuit and every federal district court in California to have considered the issue (including this Court) has expressly held that California's anti-SLAPP statute *does not apply* to federal law claims in federal court. The Cohen Defendants fail to cite or discuss this controlling precedent in improperly urging application of Section 425.16 to Duncan's copyright infringement and false advertising claims. Part I(A), *infra*.

As for the state law claims for declaratory relief, fraud and conspiracy to defraud, the motion to strike fails for three independent reasons. First, the claims do not arise out of the Cohens's speech, but instead are premised upon their acts or omissions in connection with the dispute amongst the parties regarding the Letter Agreement, and the legal elements of the state law claims are based upon the circumstances surrounding this private dispute among Duncan, SCB and the Cohens rather than any issue of public interest. Part I(B), *infra*. Second, even were the statute applicable to any of these claims, the evidence attached

Heller
Ehrman LLP

to the Complaint and submitted by the Cohen Defendants demonstrates that Duncan has a probability of overall success on the merits of his claims in part because Thomas Cohen's declaration admits the predicate facts necessary to conclude that the option of the Letter Agreement was never exercised properly. Part I(C), *infra*. And, third, it would violate the *Erie* doctrine to grant a motion to strike before Duncan has had an opportunity to take discovery. Part I(D), *infra*.

The Court should also deny Defendants' motion to dismiss in its entirety. As a threshold matter, the bulk of Defendants' motion to dismiss overlooks the fundamental rule that the factual allegations of the complaint must be taken as true on a 12(b)(6) motion. Instead, Defendants press their arguments by completely ignoring the allegations contained in Duncan's well-pleaded complaint, an omission that is ultimately fatal. The Court should deny Defendants' motion to dismiss because: (1) Duncan has adequately pled his copyright infringement claim because he has asserted ownership of the right to his novel and a violation of his exclusive right pursuant to Section 106 to prepare derivative works (Part II(A), *infra*); (2) the consent judgment between SCB and Denton Cohen does not bind Duncan (Part II(B), *infra*); (3) the statute of limitations does not bar a claim for ongoing infringement (Part II(C), *infra*); (4) Duncan's request for declaratory relief seeks a declaration as to the validity and/or termination of the Letter Agreement, not a contest over whether the Cohens have threatened him with an infringement suit, and is therefore adequately pled (Part II(D), *infra*); (5) Duncan has met Rule 9's pleading particularity requirements with respect to his fraud claim by giving the Cohens notice of the specific fraudulent statements at issue and all other requisite elements (Part II(E), *infra*);and (5) Duncan has adequately pled his false advertising and right of publicity claims. Part II(F), *infra*).

## STATEMENT OF FACTS

### A.    Summary Of Background Facts.

Duncan is the author of the novel *The River Why* and the owner of United States Copyright Registration No. TX-1-078-799 dated March 7, 1983, titled THE RIVER WHY

and all the ancillary rights.  Compl. ¶¶1, 13.  In November 1981, Duncan and Sierra Club Books ("SCB") entered a Publishing Agreement that granted SCB the right to publish *The River Why* and to act as Duncan's agent for ancillary rights, including the derivative film rights, until such time as Duncan appointed a different agent.  Compl. ¶14; SCB Answer ¶14.  The Publishing Agreement did not convey the copyright in *The River Why* to SCB. Compl. ¶14.

In the spring of 1983, SCB published *The River Why*, which was SCB's first fictional publication.  Compl. ¶15; *see* SCB Answer ¶15.  Defendant Cohen then communicated his interest in acquiring the right to prepare a film derivative work of *The River Why*, and in October 1984, Cohen, acting on behalf of Hammermark Productions, Inc. ("Hammermark"), sent a proposed letter agreement ("Letter Agreement") to SCB's agent, Andrea Nachtigall.  Compl. ¶16; *see* SCB Answer ¶16.  The Letter Agreement proposed that Hammermark would option the right to prepare a film derivative work of *The River Why*.  Compl. Ex. 1.  Cohen was aware at all relevant times that Duncan was the principal who owned the copyright to the *The River Why* and that SCB acted only as his agent with respect to the film rights.  RJN Ex. 1 ¶14 (State Court Complaint); Compl. ¶16.

The Letter Agreement had significant problems, among them that it misrepresented SCB's status, purporting that SCB *owned* and had the right to convey the copyright in *The River Why*, when in fact SCB was only authorized to serve as Duncan's agent.  Compl. ¶19 & Ex. 1.  The Letter Agreement set forth various deadlines when Hammermark was to make certain option payments in order to keep the option alive.  Compl. ¶¶18, 20.  The option expired, at the latest, in October 1987.  Compl. ¶22.[1]

In early April 1987 and *unbeknownst to Duncan*, Cohen offered Duncan's agent, SCB, an opportunity to invest in the film on its own behalf.  Compl. ¶23 & Exhs. 4, 5, 6. During the same time period, Cohen asked SCB to grant him a new option, from October 17, 1987 until October 17, 1988.  Compl. ¶24; *see* SCB Answer ¶24.  On approximately

---

[1]  Duncan contends that one such payment was never made—a payment for $2,500 that was due by April 17, 1986.  Compl. ¶22.  If Duncan's allegations are correct, the Letter Agreement expired on April 17, 1986.  Compl. ¶22.

PLAINTIFF'S OPPOSITION TO MOTION TO STRIKE AND MOTION TO DISMISS
CASE NO.: 3:08-CV-02243-BZ

Heller
Ehrman LLP

May 7, 1987—one month after making the investment opportunity available—Cohen and SCB executed a new letter agreement purporting to grant a new twelve-month option, which was set to begin that October.  Compl. ¶24.  SCB never consulted Duncan regarding this new option.  Compl. ¶24.  Indeed, at the time the extension was granted, SCB and Cohen had every reason to believe that Duncan would strongly oppose a new option grant, since Duncan had unequivocally expressed his dissatisfaction with Cohen's screenplay both to Cohen and SCB.  Compl. ¶25.  Despite SCB's awareness of Duncan's disapproval of Cohen's script, and with an investment opportunity in hand, SCB went ahead and granted Cohen the new option.  Compl. ¶25.

Before the unauthorized extended option commenced, SCB further communicated its decision to invest $10,000 in the project, contingent on Cohen's raising the additional needed funds for a $1.5 million production.  Compl. ¶26 & Exs. 8, 9, 10.  When Duncan learned of the "extension," he objected to SCB, *but SCB told Duncan he had no choice but to go along with it*.  Compl. ¶28  Duncan, completely unaware that SCB was entertaining an investment opportunity in the film on its own account and also unaware that SCB was wrong that he had no legal right to refuse, trusted and followed his fiduciary's advice.  Compl. ¶28.  Duncan only learned of Cohen's investment offer to SCB in or about late 2005 or early 2006, after he requested and received a copy of SCB's *The River Why* file from a retiring SCB employee.  Compl. ¶28.  Prior to receiving the file, Duncan had no knowledge that SCB had extended the option while entertaining an investment opportunity on its own account, nor did he have any reason to suspect his agent had purported to act on his behalf while laboring under a material conflict of interest.  Compl. ¶28.

Under the Letter Agreement, in order to exercise the option, Hammermark was obliged to develop a budget, because the payment due upon exercise was calculated off the film's budget, i.e., 1/3 of 5% of the film's budget.  In or about October 1988, a new entity— "River Why Partners"—purported to exercise the option and assessed a $1,234,093 budget for the film.  Compl. ¶29; *see* Cohen Decl. Ex. F.  There was no contemporaneous written assignment between Hammermark and River Why Partners.  Compl. ¶30.  Cohen, acting as

the general partner of River Why Partners, tendered the first 1/3 of the required payment on or about October 12, 1988.  Compl. ¶29; *see* Cohen Decl. Ex. F.  Cohen stated the remaining 2/3 would be paid upon "commencement of photography, which I hope will be next summer."  Compl. ¶29 & Ex. 12.

The proposed budget was a sham designed to fraudulently retain the right to prepare a film derivative work of *The River Why*.  Compl. ¶31.  Neither Hammermark, Cohen, River Why Partners nor anyone else then claiming through any of them made any concrete steps to support the proposed budget that would be expected by industry standards—i.e., there were no commitments in the budget amount and no director or actors involved in the project.  Compl. ¶31.  Nor did Cohen have any basis for warranting that he would make the remaining 2/3 payment upon commencement of photography within a reasonable time, and certainly not by the following summer, as he promised in his October 12 letter.  Compl. ¶31.  Despite Hammermark's failure to comply with the terms of the Letter Agreement, and with knowledge of Duncan's disapproval, SCB purported to accept the River Why Partners' option exercise payment.  Compl. ¶32 & Ex. 13.

Following the purported exercise of the option, Hammermark and River Why Partners failed to perform.  "Next summer" came and went, but photography did not commence.  In fact, *five years* came and went without commencement of photography by anyone.  Compl. ¶33.  By 1993, photography still had not commenced.  In the interceding years, Duncan forewent various other opportunities to make the film, because of the cloud over title to the rights to prepare motion picture derivative works.  Compl. ¶33.  Finally, in or about 1993, Duncan became aware that Cohen was attempting to sell the film rights to a third party.  Compl. ¶34.  In light of Hammermark's complete failure to perform, in October 1993, Duncan expressly terminated the Letter Agreement and notified Cohen that the film rights had reverted to him.  Compl. ¶34 & Ex. 14.

It appears that Cohen continued to claim he had the right to prepare the film (although it is unclear in exactly whose name) despite the 1993 termination, because in or about 2004, Cohen purportedly conveyed the Letter Agreement to his wife, Kristi Denton

Heller
Ehrman LLP

5

Cohen. Compl. ¶36. Duncan learned of Denton Cohen's renewed efforts to produce the film. Compl. ¶37. Duncan sent the Cohens a letter reiterating his termination of the Letter Agreement. Compl. ¶37. Duncan then set about finding an attorney, and retained one in 2006. Duncan spent the next two years attempting to negotiate an amicable resolution with SCB and the Cohen Defendants, including a mediation that occurred in the summer of 2007. Compl. ¶40. Despite these on-going efforts, in July 2007, Peloton filed a lawsuit against the Sierra Club in California state court (*Peloton Prods. v. Sierra Club*, Case No. CGC 07-465687) ("the Superior Court action"), seeking a declaration that the Letter Agreement is valid and binding. Compl. ¶41. The court expressly held that no judgment would bind David James Duncan. RJN Ex. 2. Despite SCB's awareness that Duncan disputed the validity of the Letter Agreement, in November 2007, Sierra Club and Peloton entered a stipulated judgment. RJN Ex. 3. Still, SCB confirmed in the stipulated judgment that it would not bind Duncan. *Id.*

Despite the invalidity of the option transactions, and despite the termination of the option for failure to perform, Denton Cohen continues to engage in ongoing infringement by preparing a motion picture derivative work of *The River Why*. Compl. ¶37, 44. Worse, Denton Cohen uses Duncan's good name to further her efforts. Although Duncan has not authorized Peloton to use his name or otherwise to suggest he is affiliated with or endorses the Peloton production in any way, Denton Cohen has used Duncan's name, without his authorization and in a manner that implies his endorsement, to solicit investments from people with an affinity for fly fishing, Duncan and his novel. Compl. ¶39. She targets audiences where she knows Duncan's goodwill is at its highest, including the Salt Lake City Outdoor Retailer Trade Show, where Duncan has been a featured speaker. Compl. ¶39. On a page entitled "who's who" in the production, the Peloton website lists David James Duncan first, as the author of the novel. Compl. ¶38.

**B.    Claims For Relief.**

Premised upon the foregoing, Duncan has made the following claims. The first claim for relief states a claim for ongoing copyright infringement by Defendant Denton

Cohen, based on her unauthorized efforts to produce a film infringing Duncan's copyright in *The River Why*.  Compl. ¶¶43-48.  The second claim for relief seeks declaratory relief against all Defendants, seeking a declaration that the Letter Agreement is of no further force and effect, either because it as *void ab initio* or because subsequent events have resulted in its lapse or termination.  *Id.* ¶¶49-58.  The third claim states a claim for breach of fiduciary duty against SCB for, *inter alia*, failing to disclose its consideration of an investment opportunity in the film while acting as Duncan's agent concerning the matter of his film rights, and, at the same time, agreeing to extend Cohen's option in the film rights.  *Id.* ¶¶59-64.  The fourth claim is for actual fraud against Defendant Cohen, based on, *inter alia*, his misrepresentations and false promises surrounding his purported exercise of the option.  *Id.* ¶¶65-70.

The fifth claim for constructive fraud is asserted against SCB, for failing to disclose its conflict of interest and improperly assuring Duncan that he had no choice but to accept the extended option given to Cohen.  *Id.* ¶71-74.  The sixth claim asserts conspiracy to defraud against all defendants, based on the agreement and collusive efforts of all defendants to deny Duncan the film rights in *The River Why*.  *Id.* ¶¶75-79.  The seventh and eighth claims against Denton Cohen, for false advertising under the Lanham Act and violation of the right of publicity, respectively, are based on Defendant Denton Cohen's misleading assertions that Duncan endorses her production efforts in seeking to solicit funding.  *Id.* ¶¶80-90.

## ARGUMENT

## I.    THE COHEN DEFENDANTS' SPECIAL MOTION TO STRIKE MUST BE DENIED.

The Cohen Defendants' special motion to strike borders on the frivolous.  The motion is defective from the outset because the Cohens have failed to offer any of the requisite claim-by-claim analysis.  *See City of Cotati v. Cashman,* 29 Cal. 4th 69, 78 (2002); Code Civ. Proc. § 425.16(b)(1) ("A *cause of action* against a person arising from any act of that person in furtherance of the person's right of petition or free speech under

Heller
Ehrman LLP

7

the United States or California Constitution in connection with a public issue  shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail *on the claim*.") (emphases added).  When such analysis is undertaken, it is plain that Section 425.16 does not apply. First, it does not apply to the federal claims.  Part A, *infra*.  Second, it does not apply to the state law claims because those claims are premised upon the Cohen's conduct with respect to the Letter Agreement, not upon speech or a matter of public interest.  Part B, *infra*. Third, even assuming the statute applied to any of the claims, then based upon the evidence attached to the Complaint and Thomas Cohen's declaration Plaintiff has demonstrated likely success because the option was never properly exercised.  Part C, *infra*.  Finally, it would be wholly inconsistent with *Erie* for this Court to grant any aspect of the Special Motion to Strike with prejudice without affording Duncan discovery and an opportunity to prove his claims.  Part D, *infra*.

**A.    California's Anti-SLAPP Statute Does Not Apply To Federal Claims Pending In Federal Court.**

Remarkably, the Cohen Defendants fail to provide any authority for application of Section 425.16 to Duncan's first and seventh claims for copyright infringement and false advertising.  Undoubtedly that is because the statute indisputably does not apply to federal claims brought in federal court.  *See In re Bah*, 321 B.R. 41, 46 (9th Cir. BAP 2005) (finding California's anti-SLAPP statute does not apply to federal questions in federal court); *Kearney v. Foley and Lardner*, Civ. No. 05-CV-2112-L (LSP), 2008 WL 761089, at *2 (S.D. Cal. Mar. 18, 2008) (finding anti-SLAPP does not apply to federal causes of action); *Summit Media LLC v. City of Los Angeles*, 530 F. Supp. 2d 1084, 1095 (C.D. Cal. 2008) (same); *Sonoma Foods, Inc. v. Sonoma Cheese Factory, LLC*, No. C 07-00554 JSW, 2007 WL 2122638 at *4 (N.D. Cal. July 23, 2007) (finding Section 425.16 does not apply to federal question claims in federal court because such application would frustrate substantive federal rights); *Bulletin Displays, LLC v. Regency Outdoor Adver., Inc.*, 448 F. Supp. 2d 1172, 1180 (C.D. Cal. 2006) ("Although the anti-SLAPP statute does apply to

Heller
Ehrman LLP

8

state law claims brought in federal court, [] it does not apply to federal question claims in federal court because such application would frustrate substantive federal rights."); *Globetrotter Software, Inc. v. Elan Computer Group, Inc.*, 63 F. Supp. 2d 1127, 1130 (N.D. Cal. 1999) (finding application of anti-SLAPP statute would cause a direct clash between state procedural law and federal procedural and substantive law under *Erie*).[2]

Duncan's federal copyright and false advertising claims are not subject to the Cohen Defendants motion to strike.  Nor, for the reasons expressed in Part II, *infra* are those claims deficient.

### B.    The Anti-SLAPP Statute Does Not Apply To Duncan's State Law Claims.

### 1.    The State Law Claims Do Not Arise Out Of Speech.

The Cohen Defendants also have failed to meet their initial burden to demonstrate that each claim for relief premised upon state law actually arises out of their speech-related activity.  *Summit Media, LLC*, 530 F. Supp. 2d at 1094 (moving party bears the burden of making an initial *prima facie* showing that plaintiff's claims "arise from acts of the moving party taken to further the moving party's right of free speech or petition in connection with a public issue.") (internal brackets omitted).  In order for Section 425.16 to apply to any particular state law claim, "the defendant's act underlying the plaintiff's cause of action must *itself* have been an act in furtherance of the right of petition or free speech." *Cashman*, 29 Cal. 4th at 78 (emphasis in original).  In other words, the defendants' conduct that forms the basis for the plaintiff's cause of action against them must have been in furtherance of their exercise of free speech or right to petition.  *Id.*  There must be a direct causal relationship between the underlying act of speech and the claim for relief.  That is plainly not the case here.

Instead, the factual allegations underlying the state law declaratory relief, fraud, and

---

[2] Although courts in the Ninth Circuit have permitted the application of anti-SLAPP to *pendent state law claims* or in *diversity actions*, not one single court of which plaintiff is aware has permitted its application to federal causes of action.  *See Metabolife Int'l, Inc. v. Wornick*, 264 F.3d 832 (9th Cir. 2001) (applying anti-SLAPP to state law claims under diversity jurisdiction); *Globetrotter Software*, 63 F. Supp. 2d at 1130 (applying anti-SLAPP statute to pendent state law claims, but not to federal law claims).

9

Heller
Ehrman LLP

conspiracy to defraud claims (as well as the breach of fiduciary duty and constructive fraud claims against SCB) center on the Cohen Defendants' acts and omissions concerning the Letter Agreement, not on their vision for a film version of *The River Why*.  Duncan alleges acts and omissions that constituted both fraud and breach of contract, entitling him to terminate the Letter Agreement.  None of these allegations concern the content of any proposed or actual film.  The fraud occurred when Defendant Cohen and SCB secretly exchanged an investment opportunity for an extended option, and Cohen then tendered a sham budget and a false promise regarding the commencement of photography.  Complaint ¶¶23-28, 31, 66-68.  A breach of the Letter Agreement entitling Duncan to terminate occurred when Cohen failed to commence photography within a reasonable time.  Denton Cohen has no rights because the chain of title is defective.  None of these allegations has anything to do with the content of any film.  Indeed, if a film had ever been made within the last twenty-five years since the option was first purportedly granted, then none of these claims would even exist.  These claims are not premised upon a film, *they are premised upon the absence of one.*

    If the Cohen Defendants were correct in their reading of Section 425.16, then any claim for breach of contract or fraud regarding an obligation with respect to an underlying object of expression (books, films, video games, etc.) would automatically be subject to Section 425.16.  This is not the law.  Instead, Section 425.16 requires a proximal relationship between *the speech itself* and the claim for relief.  *Cashman,* 29 Cal. 4th at 78.[3] That relationship is not present here, and the statute simply does not apply.

    Nor does the right of publicity claim arise out of the exercise of speech protected by the anti-SLAPP law.  Denton Cohen's use of Duncan's name in soliciting investors in her production efforts is a form of commercial speech that falls outside the protection of the statute.  *See Rezec v. Sony Pictures Ent'mt*, *Inc.,* 116 Cal. App. 4th 135, 140 (2004).

---

[3] Duncan's allegations are a far cry from typical anti-SLAPP cases, which involve claims arising out of a defendant's speech, like defamation, interference with prospective economic advantage, intentional infliction of emotional distress.  *See* Cal. Prac. Guide Civ. Pro. Before Trial Ch. 7(II)-E.

Heller
Ehrman LLP

10

Specifically, Section 425.16 does not apply to speech made in connection with the sale of securities.  Cal. Civ. Proc. Code § 425.17(c).  Investments in a film are securities, as is acknowledged by Denton Cohen in her Complaint filed in the Superior Court action, which alleges, *inter alia*, [i]n 2007, Peloton enlisted a major investor and *drafted a private placement memorandum* for the purposes of raising the remaining funds necessary to start production."  RJN Ex. 1 ¶30 (emphasis added).  Denton Cohen's use of Duncan's name to solicit funds for a movie that is not yet in production does not fall within the statutory exemption for "[a]ny action against any person or entity based upon the creation, dissemination, exhibition, advertisement, or other similar promotion of any dramatic, literary, musical, political, or artistic work, including, but not limited to, a motion picture or television program, or an article published in a newspaper or magazine of general circulation."  Cal. Civ. Proc. Code § 435.17(d)(2).

### 2.    The State Law Claims Are Based Upon A Private Dispute, Not A Matter Of Public Interest.

Even if the Court were to find that any of the state law causes of action did arise out of acts in furtherance of the Cohen Defendants' free speech, the conduct here does not relate to a public issue, as required by Section 425.16(b).  The purpose of the anti-SLAPP statute is to avoid chilling speech on matters of "public significance."  Cal. Civ. Proc. Code § 425.16(a).  Duncan's state law claims all relate to a private dispute between Duncan, SCB, and the Cohens over the validity of the Letter Agreement and the corollary use of Duncan's name.

> The boundaries of 'public interest' have not been precisely defined, but the cases that have found that a party's speech to be of 'public interest' involve matters in the public eye, conduct that could directly effect a large number of people beyond the direct participants, or a topic of widespread public discussion.

*Kinderstart.com LLC v. Google, Inc.*, No. C 06-2057 JF (RS), 2007 WL 831806, at *22 (N.D. Cal. Mar. 16, 2007) (finding Google's removal of a website from its result lists was not a matter of public interest, but rather a private dispute).  A statement is in connection with a public issue or matter of public interest "if the statement or conduct concerns a topic

Heller
Ehrman LLP

11

of widespread public interest and contributes in some manner to a public discussion of the topic." *Hall v. Time Warner, Inc.*, 153 Cal. App. 4th 1337, 1347 (2007) (finding widespread public interest in Marlon Brando's distribution of assets in his will). In other words, the Court must look at the actual speech itself and determine whether it relates to a public issue.

Here, the Cohen Defendants make the conclusory allegation that public interest in *The River Why* generally means that the conduct underlying Duncan's causes of action are a matter of public interest. That is simply wrong. The state law claims are based upon matters that are *not* in or expected to be in the public eye, will *not* directly effect a large number of people, and are not a topic of widespread public discussion. Except for the copyright infringement claim, none of the claims in this suit are premised directly upon the content of the film. Were it not for the filing of this lawsuit, the public would be blissfully ignorant of the Publishing Agreement, the Letter Agreement, SCB's improper extensions and renewals thereof, Cohen's investment offer to SCB, his sham budget, and the false promise to begin production. Nor can it be said that Denton Cohen's use of Duncan's name in soliciting investors is a topic of widespread discussion that will effect a large number of people. Application of the anti-SLAPP law to this case would be a gross distortion of the intent to encourage "continued participation in matters of public significance." Cal. Civ. Proc. Code § 425.16(a). The statute does not apply to any of the state law claims for this independent reason.

### C.     Cohen's Declaration Demonstrates That Duncan Has a Probability of Success on the Merits of His Claims.

Even assuming the Defendants had met their burden of establishing application of Section 425.16 to any claim, the currently available evidence shows that Duncan is likely to succeed. Duncan "need not *prove* the challenged claims. . . [he] need only establish the challenged cause of action has 'minimal merit.'" *Sonoma Foods*, Inc., 2007 WL 2122638 at *6 (citing *Navellier v. Sletten*, 29 Cal. 4th 82, 94 (2002). His burden is satisfied if "the complaint is legally sufficient and supported by a *prima facie* showing of facts to sustain a

favorable judgment if the evidence submitted by the plaintiff is credited." *Metabolife Intern., Inc. v. Wornick*, 264 F.3d 832, 840 (9th Cir. 2001). A court can rely exclusively on the well-pleaded allegations in the complaint in denying a motion to strike. *Condit v. National Enquirer, Inc.*, 248 F. Supp. 2d 945, 954 (E.D.Cal. 2002).

Here, not only has Duncan sufficiently alleged each claim, *see* Part II, *infra*, but, more fundamentally, Duncan will prevail on his claims, because the evidence *submitted by Defendants in support of the motion* shows that the Letter Agreement has long since expired. As demonstrated in Exhibit F to Mr. Cohen's Declaration (also marked as Exhibit 12 to the Complaint), the option exercise letter was sent on River Why Partners letterhead and was signed by Cohen in his capacity of and with the signature line "General Partner." Cohen Decl. Ex. F; *see* Complaint Ex. 12. But Mr. Cohen also concedes in his declaration that River Why Partners was not entitled to assume the rights unless and until photography commenced (which it did not). Cohen Decl. ¶12 at p. 5:10-11. Thus, River Why Partners never owned the option it was purporting to exercise, and it did not have the power to accept the offer contained in the option. Options are strictly construed. *See Cummings v. Bullock*, 367 F.2d 182, 186 (9th Cir. 1966) ("That is why the language of the option agreement is construed in favor of the optionor and why the courts require that the optionee comply strictly with whatever conditions the agreement imposes upon his right to exercise the option if he chooses to do so") (applying California law). Accordingly, the option expired without a proper exercise, the Cohen Defendants have no rights with respect to *The River Why*, and lacking such rights they are sure to be defeated on all claims.

Second, the Cohen Defendants cannot show that they acquired the film rights through a proper written assignment, either from Hammermark Productions, Inc. to Cohen, or from Cohen to Denton Cohen. Compl. ¶53. Cohen fails to aver any contemporaneous written assignment and fails to attach any such assignment to his declaration. Counsel for Duncan has repeatedly requested copies of such assignments, and in fact all documents in the chain of title from Hammermark to Denton Cohen, should they exist. Hurst Decl. ¶3. The documents were never provided, and for purposes of this Motion, Cohen's failure to

Heller
Ehrman LLP

13

1  supply them either upon request or in connection with the Motion is good enough to

2  establish a reasonably inference that proper assignment documents do not exist.

3      The nonexistence of proper assignment documents is fatal to any claim by the

4  Cohens that they own any right or exclusive license to *The River Why*.  The conveyance of

5  exclusive rights under the Copyright Act can only be effected in writing.  17 U.S.C. §

6  204(a); *see also Davis v. Blige*, 505 F.3d 90 (2d Cir. 2007).  Accordingly, Duncan will

7  prevail on the merits of this suit in establishing his entitlement to stop the Cohens from

8  exploiting rights to *The River Why*.

9      **D.  The *Erie* Doctrine Prohibits Application Of Section 425.16 In The
        Fashion Proposed By The Cohen Defendants.**

10

11      Finally, even assuming that the Cohen Defendants met their burden of establishing

12  that Section 425.16 applies to any of Duncan's state law claims, which they have not, or

13  that Duncan has failed to show probable success, which he has not, the Motion cannot be

14  granted under the present circumstances because it would violate the *Erie* doctrine to do so.

15  The Ninth Circuit has expressly held that a plaintiff facing an anti-SLAPP challenge is

16  entitled to take discovery before any claims are struck.  *Metabolife Int'l*, 264 F.3d at 845-46

17  (requiring the district court to permit the plaintiff to conduct discovery before granting a

18  motion to strike); *see also Bulletin Displays*, 448 F. Supp. 2d at 1180.  Otherwise, under

19  *Erie* principles, there would be a direct clash between federal and state procedural law; *i.e.*,

20  a clash between Section 425.16 and Rule 56(f).  As the *Metabolife* Court explained, the

21  Supreme Court "has restated [Rule 56(f)] as requiring, rather than merely permitting,

22  discovery where the nonmoving party has not had the opportunity to discover information

23  that is essential to its opposition."  *Id.* at 846 (internal quotation marks omitted).

24  Consequently, the *Metabolife* Court held that summary adjudication of a claim under

25  Section 425.16 (i.e., striking a claim) without first offering a plaintiff an opportunity to take

26  discovery results in a direct conflict with Fed. R. Civ. Proc. 56(f).[4]  *Metabolife Int'l*, 264

27

28  [4] It also bears noting that an anti-SLAPP motion striking an *initial* complaint should
    not be granted in federal court without first affording the plaintiff an opportunity to amend

Heller
Ehrman LLP

14

1  F.3d at 846.  The Motion to Strike therefore must be denied until Duncan has had a

2  reasonable opportunity to litigate his claims, and to the extent that it may be procedurally

3  necessary to do so, Duncan hereby requests such leave pursuant to Rule 56(f) on the

4  grounds detailed in the accompanying declaration of Annette L. Hurst.

5  **II.    THE COHEN DEFENDANTS MOTION TO DISMISS LIKEWISE SHOULD**
      **BE DENIED.**

6

7       A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the legal

8  sufficiency of the claims alleged in the complaint.  *See Parks Sch. of Bus., Inc. v. Symington*,

9  51 F.3d 1480, 1484 (9th Cir. 1995).  Dismissal under Rule 12(b)(6) may be based only on

10 the "lack of a cognizable legal theory" or "the absence of sufficient facts alleged under a

11 cognizable legal theory."  *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir.

12 1988).  In applying this test the Court must accept as true all material allegations, as well as

13 reasonable inferences to be drawn from them, so as to construe the pleading in the light

14 most favorable to the non-moving party.  *See Pareto v. F.D.I.C.*, 139 F.3d 696, 699 (9th Cir.

15 1998).  "[A] well-pleaded complaint may proceed even if it appears 'that a recovery is very

16 remote and unlikely.'"  *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1965  (2007)

17 (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)).  Thus, to state a cognizable claim,

18 the "[f]actual allegations must be enough to raise a right to relief above the speculative

19 level . . . ."  *Bell Atlantic*, 127 S. Ct. at 1965.

20      As noted in *Bell Atlantic*, with regard to factual sufficiency there are two lines that

21 must be crossed "to enter the realm of plausible liability": (1) "the line between the

22 conclusory and the factual" and (2) the line between "the factually neutral and the factually

23 suggestive."  *Id*. at 1966 n.5.  At the same time, however, the recitation of such facts need

24 be no more than a "short and plain statement of the claim showing that the pleader is

25 his complaint.  Otherwise, Cal. Civ. Proc. Code § 425.16 would collide directly with the
   Federal Rules of Civil Procedure (implicating *Erie*), which permit liberal amendments.

26 *Verizon Delaware, Inc. v. Covad Commc'ns, Co.*, 377 F.3d 1081, 1091 (9th Cir. 2004)

27 ("[G]ranting a defendant's anti-SLAPP motion to strike a plaintiff's initial complaint
   without granting the plaintiff leave to amend would directly collide with Fed. R. Civ. P.

28 15(a)'s policy favoring liberal amendment.").

Heller
Ehrman LLP

15

entitled to relief." Fed. R. Civ. P. 8(a)(2). "[T]he Supreme Court has repeatedly instructed [the courts] not to impose such heightened standards in the absence of an explicit requirement in a statute or federal rule." *Skaff v. Meridien N. Am. Beverly Hills, LLC,* 506 F.3d 832, 841-42 (9th Cir. 2007) (citing *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 515 (2002)).

The Cohen Defendants improperly submit documents and other evidence along with their motion to dismiss which the Court should disregard. Ordinarily, if a court considers evidence outside the pleadings, it must convert a 12(b)(6) motion to a summary judgment motion, and it must give the nonmoving party an opportunity to respond. *United States v. Ritchie*, 342 F.3d 903, 907-08 (9th Cir. 2003). A narrow exception to that general rule is that a Court may consider a document not attached to the complaint if "the plaintiff refers *extensively* to the document or the document forms the *basis* of the plaintiff's claim." *Ritchie*, 342 F.3d at 908 (emphases added). With the exception of Exhibit F to the Declaration of Thomas A. Cohen (which is attached to the Complaint as Exhibit 12), Duncan did not rely on the contents of the exhibits to Cohen's declaration in drafting the Complaint, nor did he refer to these documents extensively. For example, Duncan makes a mere fleeting reference to the "prospectus" in the Complaint (Compl. ¶26), upon which the Cohen Defendants seize to ask the Court to consider the document in their motion to dismiss. MPA at 20. But Duncan did not rely on the contents of the prospectus or any of these other documents in setting forth his claims. All of this evidence must be disregarded in connection with the motion to dismiss.[5]

### A. Duncan Has Adequately Pled Copyright Infringement.

#### 1. Duncan Has Standing To Sue For Infringement.

The Cohen Defendants argue that Duncan lacks standing to pursue his copyright infringement claim. Standing requirements are satisfied in a copyright infringement case if

---

[5] In addition to this general objection, Duncan's specific objections to the evidence submitted by the Cohens are set forth in the document filed herewith entitled Plaintiff's Objections to Evidence in Opposition to Motion to Dismiss Complaint and Special Motion to Strike Under the Anti-SLAPP Statute.

Heller
Ehrman LLP

PLAINTIFF'S OPPOSITION TO MOTION TO STRIKE AND MOTION TO DISMISS
CASE NO.: 3:08-CV-02243-BZ

the plaintiff alleges ownership of the copyright at issue. *Kourtis v. Cameron*, 419 F.3d 989, 999 (9th Cir. 2005). Duncan pleads ownership of the copyright in the novel *The River Why*. Compl. ¶13. Duncan therefore plainly has standing.

The Cohen Defendants misconceive the potential legal effect of the Letter Agreement. The Letter Agreement, if valid, evidences an authorization to prepare a derivative work of the novel in the form of a motion picture based thereon. It is therefore a defense to Duncan's charge of infringement based upon his ownership of the copyright in the novel. The dispute over the Letter Agreement has nothing to do with Duncan's ownership of the underlying work. The Letter Agreement, if valid, constitutes a defense to the charge of infringement. *Worldwide Church of God v. Philadelphia Church of God, Inc.*, 227 F.3d 1110, 1114 (9th Cir. 2000) ("The existence of a license creates an affirmative defense to a claim of copyright infringement."). Duncan therefore has adequately pled ownership and accordingly, a motion to dismiss for lack of standing is improper.[6]

Moreover, the argument that Duncan is a third party beneficiary to the Letter Agreement is irrelevant to the copyright infringement claim. Rescission is not a predicate to Duncan's prima facie case of copyright infringement, which rests upon ownership of his copyright and invasion of his right to prepare a derivative work. Either the Letter Agreement provides the Cohens a defense of authorization or it does not. Duncan need not rely upon the Letter Agreement to make out the *prima facie* elements of his copyright claim. It is a defense tendered by the Cohens. Duncan need not establish that it is void as a threshold consideration, because he is not suing on any right created by it. But, for fair measure, the Complaint alleges that the Letter Agreement is void, and if not void, then terminated.

---

[6] Defendants' reliance on *Morris v. Castle Rock Entm't, Inc.* for the proposition that Duncan cannot reclaim the film rights based on a breach of contract is inapposite. 246 F. Supp. 2d 290 (S.D.N.Y. 2003). *Morris* involved a work for hire, where the plaintiff writer was commissioned by the defendants to prepare a particular work and the writer could never purport to have owned the copyright. "[M]ost courts that have considered the issue have rejected the notion that the creator of a work for hire may reclaim the copyright in his work once there has been a breach of the work for hire agreement by the commissioning party." *Id.* at 294. Here, from the beginning, the copyright in *The River Why* belonged to Duncan, and it is frivolous to suggest that Duncan lacks standing to press his claim for infringement.

Moreover, the Cohens misapprehend Duncan's relationship to the Letter Agreement. SCB entered the Letter Agreement *as Duncan's agent* and on his behalf.  Compl. ¶¶14, 16. In other words, Duncan was the principal behind the agreement, not a third party beneficiary as suggested by the Cohen Defendants.  Accordingly, Duncan has all the rights that SCB would have.  Cal. Civ. Code § 2330 ("[A]ll the rights and liabilities which would accrue to the agent from transactions . . . accrue to the principal.").  Cohen knew Duncan was the principal when he signed the Letter Agreement (Compl. ¶16), but even if he did not and Duncan were an undisclosed principal, Duncan remains the real party to the contract and has standing to challenge it as he sees fit (which he has done in connection with the declaratory relief claim).  *American Builder's Ass'n v. Au-Yang*, 226 Cal. App. 3d 170, 176 (1990) (finding that an undisclosed principal may claim the benefits of a contract, and sue or be sued in his or her own name); *Purviance v. Shostak*, 90 Cal. App. 2d 295, 297 (1949) (finding that "the contract of an agent is the contract of the principal and he may sue or be sued thereon, though not named therein; that notwithstanding the rule of law that an agreement reduced to writing may not be contradicted or varied by parol (*sic*), the principal may show that the agent who made the contract in his own name was acting for him; and that this proof does not contradict the writing but only explains the transaction.").  This is particularly true, where, as here, Duncan is alleging that his agent breached its fiduciary duty owed to him, Cohen induced that breach, and both SCB and Cohen engaged in fraud. *See Standard Realty & Dev. v. Ferrera*, 151 Cal. App.2d 514, 516 (1957) (permitting principal to rescind contract entered between agent and third party, where agent failed to disclose that it was acting on behalf of principal and third party).

### 2.    The Consent Judgment Does Not Bind Duncan.

Next, the Cohens claim that a consent judgment entered in the Superior Court action between Denton Cohen and SCB concerning the Letter Agreement bars Duncan's infringement claims (on the theory that he cannot attack the validity of the agreement, and consequently, the assignment of the film rights).  MPA at 13-14.  By its express terms, the consent judgment does not bind Duncan.  RJN Ex. 3.  And, the San Francisco Superior

PLAINTIFF'S OPPOSITION TO MOTION TO STRIKE AND MOTION TO DISMISS
CASE NO.: 3:08-CV-02243-BZ

Court expressly ruled that any result in that case *would not bind Duncan*.  RJN Ex. 2.

Consent judgments only have "collateral estoppel effect if the parties *clearly intend* issues

to be settled for the purposes of subsequent litigation *between them*."  *Franco v. Selective*

*Ins. Co.*, 184 F.3d 4, 9 (1st Cir. 1999) (emphasis added).  The Cohen Defendants make no

attempt to reconcile their specious collateral estoppel argument with the Superior Court's

ruling and the express terms of the consent judgment.  Nor could this stipulated judgment

possibly bar Duncan as to the assignment issue, which it does not even purport to address.

This argument is frivolous.

### 3.    The Statute Of Limitations Does Not Bar The Copyright Infringement Claim.

The Cohen Defendants also misapprehend the nature of Duncan's copyright

infringement claim when they argue that the statute of limitations bars the copyright

infringement claim.  Even putting aside issues of the timing of discovery of the fraud and

breach of fiduciary duty, Duncan's allegations for copyright infringement encompass

*ongoing* infringement by Denton Cohen.  Complaint ¶¶37, 43-48.  "In a case of continuing

infringement . . . 'an action may be brought for all acts that accrued within the three years

preceding the filing of the suit.'"  *Kourtis*, 419 F.3d at 999.  A plaintiff is not barred from

bringing a lawsuit for ongoing copyright infringement, even if his awareness of the

infringing conduct arose outside the three-year statutory period.  *Id.* at 999-1000.  The

Cohens *concede* that a claim for continuing infringement involves a rolling statute of

limitations.  MPA at 15.  Accordingly, the Court should deny the Cohen Defendants'

motion to dismiss on this ground.

The Cohens also wrongly suggest that Duncan's lawsuit contains a claim for

copyright ownership, and, thus, is barred by the statute of limitations.  MPA at 14.  The

claim is for copyright infringement based upon the unauthorized preparation of a derivative

work of Duncan's novel, to which he indisputably owns the copyright.  Compl. ¶13.  The

Cohen Defendants assert the Letter Agreement as a defense to that claim of infringement.

This is not a dispute over Duncan's copyright ownership in his underlying work.

Heller
Ehrman LLP

19

**B.    Duncan Adequately Pled His Declaratory Relief Claim.**

The Cohen Defendants make a nonsensical challenge to Plaintiff's declaratory relief claim which the Court must also deny. For over two pages, the Cohens explain that Duncan cannot obtain declaratory relief relating to his copyright infringement claim, because he cannot demonstrate that the Cohens ever threatened to sue him for infringement. MPA at 16-19. This analysis is completely irrelevant to Duncan's declaratory relief claim, which concerns the grounds upon which to declare that the Letter Agreement either never was, or no longer is, in effect. Compl. ¶¶49-64.

**C.    DUNCAN'S FRAUD CLAIM WAS ADEQUATELY PLED.**

**1.    Duncan Satisfied The Particularity Requirements For Pleading Fraud.**

Duncan has pled his fraud claim with the requisite particularity. Under Federal Rule of Civil Procedure 9(b), a plaintiff is required to plead fraud with particularity. Fed. R. Civ. P. 9(b). "[A] pleading is sufficient under Rule 9(b) if it identifies 'the circumstances constituting fraud so that the defendant can prepare an adequate answer from the allegations." *Semegen v. Weidner*, 780 F.2d 727, 734-35 (9th Cir. 1985). Where the plaintiff has stated the "time, place and nature of the alleged fraudulent activities of [defendants] . . . that is sufficient." *Id.* at 735. Under California law, the elements of a fraud claim include: (1) misrepresentation; (2) knowledge of falsity; (3) intent to defraud; (4) justifiable reliance by the party defrauded; and (5) resulting damage. *City and County of San Francisco v. Philip Morris, Inc.*, 957 F. Supp. 1130, 1141 (N.D. Cal. 1997).

Duncan has met his burden to plead each element of Cohen's fraud with sufficient particularity to make Cohen aware of the circumstances constituting the fraud so that he can prepare an answer. First, Duncan pled that Cohen made a false representation by submitting a sham budget in order to hang on to the film rights and by making a false promise to commence photography on the project within a specified period of time. Compl. ¶¶31, 52. These allegations were made with sufficient particularity—Duncan identified the specific communication, dated October 12, 1988, in which Cohen conveyed the sham budget and the

PLAINTIFF'S OPPOSITION TO MOTION TO STRIKE AND MOTION TO DISMISS
CASE NO.: 3:08-CV-02243-BZ

Heller
Ehrman LLP

false promise to commence photography within a reasonable time. Compl. ¶29. Duncan explained that the nature of the fraud was submitting this sham budget, which lacked any evidence of concrete steps to support the proposed budget, making a false promise to commence photography, and inducing SCB to breach its fiduciary duty in an effort to enable Cohen to hang on to the film rights. Compl. ¶¶31, 23-28, 66.

Next, Duncan pled that Cohen knowingly made his false representation, promise, and investment offer with the intent to induce Duncan and SCB to allow him to hang on to the film rights. Compl. ¶¶ 52, 67. The Cohen Defendants challenge this point by arguing that Duncan cannot show how "he personally, as opposed to Sierra Club Books, relied on any alleged misrepresentations by Mr. Cohen." MPA at 19. The Cohens Defendants are simply wrong to assert that Duncan's fraud claim is based on *third party* reliance. As discussed above, Duncan is the principal to the Letter Agreement, and accordingly has all the rights and liabilities under the letter agreement. Cal. Civ. Code § 2330. "Under agency principles, the fraud worked upon the agent by misrepresentation or by silence was worked upon the principal and the principal thus [has] a right to sue for fraud." *Gawara v. U.S. Brass Corp.*, 63 Cal. App. 4th 1341, 1349 (1998). Duncan's reliance was sufficient for purposes of fraud. *Id.*

Duncan's complaint also contains allegations of injury that are a consequence of Cohen's fraud—namely that Cohen was permitted to exercise the option and purport to lay claim to the film rights, resulting in a cloud over the title of the film rights and causing Duncan to forego other opportunities to create a film version of *The River Why*. Compl. ¶33.

Finally, Duncan's fraud claim against Cohen is not time-barred. Part and parcel to the misrepresentation and the false promise is Cohen's inducement to SCB to breach its fiduciary duty owed to Duncan. The Complaint was filed on April 30, 2008, and it alleges that Duncan only became aware of the facts demonstrating these events in late 2005 or early 2006, and did not hire counsel to learn of their legal significance until 2006, well within the three-year statutory period. These claims accrued upon *discovery* of the facts giving rise to

Heller
Ehrman LLP

21

the claim. *E-Fab, Inc. v. Accountants, Inc. Servs.*, 153 Cal. App. 4th 1308, 1318 (2007). Thus, in actions where the discovery rule applies, including fraud and breach of fiduciary duty, the limitations period does not accrue until the plaintiff has notice of the facts constituting the injury. *Id.* Duncan specifically pled that he only became aware of Cohen's investment offer to SCB in late 2005 or early 2006, squarely within the three-year statute of limitations period applicable to fraud claims and the four-year statute of limitations period applicable to breach of fiduciary duty. Compl. ¶28; Cal. Civ. Proc. Code § 338(d) ("The cause of action in that case is not deemed to have accrued until the discovery, by the aggrieved party, of the facts constituting the fraud or mistake."); *City of Vista v. Robert Thomas Sec., Inc.*, 84 Cal. App. 4th 882, 889 (2000) (noting statute of limitations for fraud is three years and statute of limitations for breach of fiduciary duty is four years); *Howard Jarvis Taxpayers Ass'n v. City of La Habra*, 25 Cal. 4th 809, 821 (2001) (noting declaratory relief action borrows the statute of limitations period based on the rights or obligations sought to be enforced); Cal. Civ. Proc. Code §§ 338(d), 343.[7]

Moreover, the Complaint alleges that while acting pursuant to the fraud, SCB specifically lulled Duncan when—as his agent owing a fiduciary duty to him—it informed him that he had no choice but to go along with the option extension. Compl. ¶28; *see Honig v. San Francisco Planning Dep't* 127 Cal. App. 4th 520, 529 (2005). These factual allegations of concealment, lulling and late discovery plainly preclude dismissal at the pleading stage upon the basis of the statute of limitations. *Id.*

---

[7] Defendants argue that, for purposes of establishing willful infringement, Plaintiff has not adequately pled that Denton Cohen was aware of Cohen's fraudulent conduct before acquiring the film rights. MPA at 15. This issue is irrelevant as to whether Duncan has adequately pled his copyright infringement claim and thus is not a basis for dismissal. In any event, there is a clear fact dispute between the parties over when Denton Cohen first learned of the fraud and that Cohen's claim to the film rights was challenged, and it is not a proper subject for consideration on a motion to dismiss. Defendants do not dispute Duncan's allegation that Cohen was Denton Cohen's agent. Compl. ¶69. Denton Cohen admits that she married Cohen in July 1987 (Mem. at 16), a mere two months after Cohen first made the investment offer to SCB, and while these negotiations were still ongoing. Compl. ¶¶23-28. Who knew what and when they knew it is clearly an area to be explored during discovery, and has no place in Defendants' motion to dismiss Duncan's infringement claim.

Heller
Ehrman LLP

### D.    Duncan Adequately Pled His Claim For Conspiracy To Defraud.

The Cohen Defendants misapprehend Duncan's burden at the pleading stage when they argue he must plead the elements of conspiracy with specificity.  The California Supreme Court has rejected heightened pleading for conspiracy claims, holding that "[g]eneral allegations of agreement have been held sufficient, and the conspiracy averment has even been held unnecessary, providing the unlawful acts or civil wrongs are otherwise sufficiently alleged."  *Quelimane Co. v. Stewart Title Guar. Co.*, 19 Cal. 4th 26, 47-48 (1998) (rejecting argument that separate elements of conspiracy must be pled with specificity).  Here, Duncan has adequately alleged the underlying wrong-doing that forms the basis for his conspiracy claim—both the fraud claim against Cohen and the constructive fraud claim against SCB.  Compl. ¶¶65-74.  Duncan satisfied any pleading obligation by alleging the agreement between the parties and their wrongful conduct in furtherance of the conspiracy (which incorporates the separately pled claims for fraud and constructive fraud).  Compl. ¶¶24, 75-79.[8]

### E.    The Motion To Dismiss The False Advertising And Right Of Publicity Claims Premised Upon The Defense Of The Letter Agreement Is Absurd.

The Cohen Defendants again improperly ignore Duncan's allegations in challenging Duncan's false advertising and right of publicity claims.  The Cohen Defendants move to dismiss because the Letter Agreement permits certain limited uses of the author's name.  Compl. Ex. 1 at Exhibit A ¶6 & Addendum.  But the Complaint also alleges facts and theories demonstrating that: (1) the Letter Agreement is of no force and effect; and (2) Denton Cohen has not been properly assigned the rights granted under the Letter Agreement.  Compl. ¶¶30, 49-58.  The truth of these allegations must be accepted for purposes of this Motion, and it is therefore absurdly inconsistent with Rule 12 jurisprudence to simply ignore these allegations and pretend as if the Letter Agreement were in full force

---

[8] Defendants misplace their reliance on *Kidron v. Movie Acquisition Corp.*, 40 Cal. App. 4th 1571 (1995) for the proposition that Duncan must "plead with specificity all three elements." Mem. at 24.  The *Kidron* case did not even involve the pleading stage, and instead involved the Superior Court's non-suit of the plaintiff's conspiracy claim *after trial*.

PLAINTIFF'S OPPOSITION TO MOTION TO STRIKE AND MOTION TO DISMISS
CASE NO.: 3:08-CV-02243-BZ

Heller
Ehrman LLP

and effect.[9]

## **CONCLUSION**

For the foregoing reasons, the Cohen Defendants Special Motion to Strike and Motion to Dismiss should be denied.


Dated: May 30, 2008                         Respectfully submitted,

                                            HELLER EHRMAN LLP


                                            By _____/s/ *Annette L. Hurst*_____
                                                        ANNETTE L. HURST

                                            Attorneys for Plaintiff
                                            DAVID JAMES DUNCAN

---

[9] Moreover, even were it permissible to assume that the Letter Agreement remains in effect contrary to the entire thrust of the Complaint, the Complaint alleges facts that show Denton Cohen's use of Duncan's name exceeds the permissible scope of the Letter Agreement. Compl. ¶¶38-39, 81-82, 87-88. Denton Cohen does not simply attribute authorship of the novel to Duncan, but she "has used Duncan's name, without his authorization and *in a manner that implies his endorsement* to solicit investments from people with an affinity for fly fishing, Duncan and his novel." Compl. ¶39. Denton Cohen specifically targets audiences where Duncan's goodwill is at its highest, including venues where Duncan has been a featured speaker. Compl. ¶39. Thus, Denton Cohen's use of Duncan's name goes beyond the mere use of Duncan's name in advertising and exploiting the film rights, but rather crosses into creating a false impression that Duncan in fact endorses her activities.

Heller
Ehrman LLP