ANNETTE L. HURST (Bar No. 148738)
ELISABETH R. BROWN (Bar No. 234879)
HELLER EHRMAN LLP
333 Bush Street
San Francisco, CA  94104-2878
Telephone:  +1.415.772.6000
Facsimile:   +1.415.772.6268
E-mail:       Annette.Hurst@HellerEhrman.com
                 Elisabeth.Brown@HellerEhrman.com


Attorneys for Plaintiff
DAVID JAMES DUNCAN

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAVID JAMES DUNCAN,<br><br>                                    Plaintiff,<br><br>     v.<br><br>THOMAS A. COHEN, *et al.*,<br><br>                                    Defendants. | Case No.: 3:08-cv-02243-BZ<br><br>**PLAINTIFF DUNCAN'S REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF OPPOSITION TO SPECIAL MOTION TO STRIKE AND MOTION TO DISMISS**<br><br> Date:   July 23, 2008<br> Time:  10:00 a.m.<br> Room: Courtroom G, 15th Floor |

## REQUEST FOR JUDICIAL NOTICE

In accordance with Federal Rule of Evidence 201, Plaintiff David James Duncan respectfully request that this Court take judicial notice of each of the exhibits accompanying this Request for Judicial Notice and identified in the Index attached hereto as Appendix A, comprised of pleadings and orders filed in *Peloton Prods. v. Sierra Club*, Case No. CGC 07-46587.  Federal Rule of Evidence 201 allows a court to take judicial notice of facts that are "not subject to reasonable dispute in that [they are] either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned."  Fed. R. Evid. 201(b).  Pursuant to Rule 201, the court may take judicial notice of public or quasi-public records, including prior court proceedings, administrative orders and decisions, city ordinances, and documents filed with administrative agencies.  *See United States v. S. Cal. Edison Co.*, 300 F. Supp. 2d 964, 975 (E.D. Cal. 2004) (collecting cases); *see also U.S. ex rel. Robinson Rancheria Citizens Council v. Borneo, Inc.*, 971 F.2d 244, 248 (9th Cir. 1992) (taking judicial notice of proceedings in other courts).

## EXHIBITS

***Court pleading.***  Exhibit 1 is true and correct copy of the complaint filed by Denton Cohen in San Francisco Superior Court for the State of California (*Peloton Prods. v. Sierra Club*, Case No. CGC 07-465687).  The Court may take judicial notice of pleadings filed with this and other courts.  *See, e.g.*, *Burbank-Glendale-Pasadena Airport Auth. v. City of Burbank*, 136 F.3d 1360, 1364 (9th Cir. 1998) (granting request for judicial notice of pleadings in related action); *MGIC Indem. Corp. v. Weisman*, 803 F.2d 500, 504 (9th Cir. 1986) (same).

***Court orders.***  Exhibits 2 and 3 are true and correct copies of orders issued by the San Francisco Superior Court for the State of California in Case No. CGC 07-465687.  The Court may take judicial notice of the decisions of this and other courts.  *See, e.g.*, *Papai v. Harbor Tug & Barge Co.*, 67 F.3d 203, 207 n.5 (9th Cir. 1995), *rev'd on other grounds*, 520 U.S. 548 (1997) ("Judicial notice is properly taken of orders and decisions made by other

Heller
Ehrman LLP

1

1  courts or administrative agencies.").

2  Dated: May 30, 2008                    Respectfully submitted,

3                                         HELLER EHRMAN LLP

4

5                                         By _____/s/ *Annette L. Hurst*_____
                                                       ANNETTE L. HURST

6
                                         Attorneys for Plaintiff
7                                        DAVID JAMES DUNCAN

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Heller
Ehrman LLP

**APPENDIX OF EXHIBITS CITED IN
PLAINTIFF DUNCAN'S REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF
OPPOSITION TO SPECIAL MOTION TO STRIKE AND MOTION TO DISMISS**

| **Document** | **Exhibit Number** |
|---|---|
| Summons and Complaint,<br>*Peloton Prods. v. Sierra Club*,<br>No. CGC 07-465687 (San Francisco Super. Ct. Aug. 1, 2007) | 1 |
| Order Overruling Demurrer,<br>*Peloton Prods. v. Sierra Club*,<br>No. CGC 07-465687 (San Francisco Super. Ct. Oct. 12, 2007) | 2 |
| Order for Entry of Stipulated Judgment,<br>*Peloton Prods. v. Sierra Club*,<br>No. CGC 07-465687 (San Francisco Super. Ct. Nov. 28, 2007) | 3 |

Heller
Ehrman LLP

EXHIBIT 1

**SUM-100**

# SUMMONS
## *(CITACION JUDICIAL)*

| | FOR COURT USE ONLY<br>*(SOLO PARA USO DE LA CORTE)* |
|---|---|

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*
SIERRA CLUB

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*
PELOTON PRODUCTIONS, a sole proprietorship owned by Kristi
Denton Cohen

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff.    A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case.  There may be a court form that you can use for your response. You can find those court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you.  If you cannot pay the filing fee, ask the court clerk for a fee waiver form.  If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association.

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen.  Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta.  Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.courtinfo.ca.gov/selfhelp/espanol/), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas.  Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.courtinfo.ca.gov/selfhelp/espanol/) o poniéndose en contacto con la corte o el colegio de abogados locales.*

The name and address of the court is:
*(El nombre y dirección de la corte es):*

San Francisco Superior Court
400 McAllister St.
San Francisco, CA 94102

CASE NUMBER
*(Número del Caso):* **CGC-07 - 465687**

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Lizbeth Hasse, Creative Industry Law Group, 526 Columbus Ave., 2nd floor, San Francisco, CA 94133

BY FAX

GORDON PARK-LI

DATE: **AUG 1 - 2007**
*(Fecha):*

Clerk, by CRISTINE BAUTISTA , Deputy
*(Secretario)* *(Adjunto)*

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citación use el formulario Proof of Service of Summons, (POS-010)).*

**NOTICE TO THE PERSON SERVED: You are served**
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*

3. ☑ on behalf of *(specify):*

under: ☑ CCP 416.10 (corporation)    ☐ CCP 416.60 (minor)
        ☐ CCP 416.20 (defunct corporation)    ☐ CCP 416.70 (conservatee)
        ☐ CCP 416.40 (association or partnership)    ☐ CCP 416.90 (authorized person)
        ☐ other *(specify):*
4. ☐ by personal delivery on *(date):*

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. January 1, 2004]

**SUMMONS**

Code of Civil Procedure §§ 412.20, 465

ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, State Bar number, and address):
Lizbeth Hasse (#104517)
Creative Industry Law Group
526 Columbus Ave., 2nd floor
San Francisco, CA 94133

TELEPHONE NO. 415-433-4380    FAX NO. 415-433-6580
ATTORNEY FOR (Name) Peloton Productions

FOR COURT USE ONLY

# FILED

San Francisco County Superior Court

AUG 1  2007

GORDON PARK-LI, Clerk
BY _____ Deputy Clerk

SUPERIOR COURT OF CALIFORNIA, COUNTY OF San Francisco
STREET ADDRESS: 400 McAllister St..
MAILING ADDRESS:
CITY AND ZIP CODE: San Francisco, CA 94102
BRANCH NAME:

CASE NAME:
Peloton Productions vs. Sierra Club

| CIVIL CASE COVER SHEET | | Complex Case Designation | | CASE NUMBER: CGC07- 465687 |
|---|---|---|---|---|
| [✓] Unlimited (Amount demanded exceeds $25,000) | [ ] Limited (Amount demanded is $25,000 or less) | [ ] Counter | [ ] Joinder | JUDGE: |
| | | Filed with first appearance by defendant (Cal. Rules of Court, rule 3.402) | | DEPT: |

Items 1–6 below must be completed (see instructions on page 2).

1. Check one box below for the case type that best describes this case:

**Auto Tort**
- [ ] Auto (22)
- [ ] Uninsured motorist (46)

**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
- [ ] Asbestos (04)
- [ ] Product liability (24)
- [ ] Medical malpractice (45)
- [ ] Other PI/PD/WD (23)

**Non-PI/PD/WD (Other) Tort**
- [ ] Business tort/unfair business practice (07)
- [ ] Civil rights (08)
- [ ] Defamation (13)
- [ ] Fraud (16)
- [ ] Intellectual property (19)
- [ ] Professional negligence (25)
- [ ] Other non-PI/PD/WD tort (35)

**Employment**
- [ ] Wrongful termination (36)
- [ ] Other employment (15)

**Contract**
- [ ] Breach of contract/warranty (06)
- [ ] Rule 3.740 collections (09)
- [ ] Other collections (09)
- [ ] Insurance coverage (18)
- [ ] Other contract (37)

**Real Property**
- [ ] Eminent domain/inverse condemnation (14)
- [ ] Wrongful eviction (33)
- [ ] Other real property (26)

**Unlawful Detainer**
- [ ] Commercial (31)
- [ ] Residential (32)
- [ ] Drugs (38)

**Judicial Review**
- [ ] Asset forfeiture (05)
- [ ] Petition re: arbitration award (11)
- [ ] Writ of mandate (02)
- [ ] Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403)**
- [ ] Antitrust/Trade regulation (03)
- [ ] Construction defect (10)
- [ ] Mass tort (40)
- [ ] Securities litigation (28)
- [ ] Environmental/Toxic tort (30)
- [ ] Insurance coverage claims arising from the above listed provisionally complex case types (41)

**Enforcement of Judgment**
- [ ] Enforcement of judgment (20)

**Miscellaneous Civil Complaint**
- [ ] RICO (27)
- [✓] Other complaint (not specified above) (42)

**Miscellaneous Civil Petition**
- [ ] Partnership and corporate governance (21)
- [ ] Other petition (not specified above) (43)

2. This case [ ] is [✓] is not   complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. [ ] Large number of separately represented parties   d. [ ] Large number of witnesses
   b. [ ] Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve   e. [ ] Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
   c. [ ] Substantial amount of documentary evidence   f. [ ] Substantial postjudgment judicial supervision

3. Remedies sought (check all that apply): a. [ ] monetary   b. [✓] nonmonetary; declaratory or injunctive relief   c. [ ] punitive
4. Number of causes of action (specify): One
5. This case [ ] is [✓] is not   a class action suit.
6. If there are any known related cases, file and serve a notice of related cases. (You may use form CM-015.)

Date: July 31, 2007
Lizbeth Hasse
_____
(TYPE OR PRINT NAME)                    ► _____
                                        (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

BY FAX

## NOTICE
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code) (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

Form Adopted for Mandatory Use
Judicial Council of California
CM-010 [Rev. July 1, 2007]

CIVIL CASE COVER SHEET

Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;
Cal. Standards of Judicial Administration, std. 3.10
www.courtinfo.ca.gov

American LegalNet, Inc.
www.FormsWorkflow.com

Lizbeth Hasse (#104517)
Creative Industry Law Group
526 Columbus Ave., 2nd floor
San Francisco, CA 94133
(415) 433-4380

Thomas A. Cohen (#154581)
Law Offices of Thomas A. Cohen
639 Front St., 4th floor
San Francisco, CA 94111
(415) 777-1997

Attorneys for Plaintiff
Peloton Productions

**FILED**

San Francisco County Superior Court

AUG 1 2007

GORDON PARK-LI, Clerk
BY: _____
Deputy Clerk

CASE MANAGEMENT CONFERENCE SET

SUMMONS ISSUED JAN 2 5 2008 -9:00 AM

DEPARTMENT 212

SUPERIOR COURT OF THE STATE OF CALIFORNIA

FOR THE COUNTY OF SAN FRANCISCO

PELOTON PRODUCTIONS, a sole
proprietorship owned by Kristi Denton Cohen,

Plaintiff,

vs.

SIERRA CLUB,

Defendant

Case No. CGC 07- 465687

VERIFIED COMPLAINT FOR
DECLARATORY JUDGMENT

**BY FAX**

Plaintiff Peloton Productions, by counsel, for its complaint against Sierra Club, states as follows:

I.    NATURE OF THE ACTION

1. This is an action for declaratory relief by Peloton Productions, assignee of the motion picture rights and producer of a proposed movie based on the novel <u>The River Why</u> written by

Verified Complaint for Declaratory Judgment—page 1

1   David James Duncan and published by Sierra Club Books.

2       2. Mr. Duncan through his attorney and otherwise has asserted, in writing, that the

3   agreement by Sierra Club conveying the motion picture rights to his novel is not valid, and

4   demanding that Peloton cease and desist production.

5       3. Peloton has been in active development of the movie, but is prevented from moving

6   forward because of Mr. Duncan's assertions. Investors and distributors will not participate in a

7   movie based on The River Why when the underlying rights are in dispute.

8

9       II.     PARTIES

10      4. Kristi Denton Cohen is now and at all times herein mentioned was engaged in

11  business under the fictitious name Peloton Productions ("Peloton"), and has filed the statement

12  and published the notice required by Business & Professions Code § 17918. Peloton,

13  headquartered in Mill Valley, CA is in the business of producing motion pictures—most

14  recently, *Vertical Frontier*, a feature length documentary about Yosemite rock climbing

15  narrated by Tom Brokaw. Sierra Club Productions executive produced *Vertical Frontier*.

16      5. Sierra Club ("Sierra") is a California corporation, with its principal place of business

17  in San Francisco, California. Sierra Club is America's oldest, largest and most influential

18  grassroots environmental organization.

19      6. Sierra Club Books publishes books on the natural world and environmental topics for

20  a broad general audience including The River Why by David James Duncan ("Duncan").

21  Plaintiff is informed and believes, and on such information and belief alleges, that Sierra Club

22  Books is a division of Sierra Club and is not a separate legal entity.

23

24      III.    CASE AND CONTROVERSY

25      7. There is now existing between Peloton and Sierra an actual, antagonistic, and

Verified Complaint for Declaratory Judgment—page 2

ı˙d                                                        d0ɩ:ʑ0 ʑ0 ɩɛ ɪnſ

1 justiciable controversy with respect to which Peloton is entitled to have a declaration of its

2 rights.

3      8. In February 1983, Sierra published Duncan's novel, The River Why.

4      9. In October 1984, Hammermark Productions, Inc. entered into an agreement with

5 Sierra for the acquisition of the motion picture rights to Duncan's novel, The River Why

6 (hereafter the "Agreement.")

7      10. A true and correct copy of the Agreement is attached as Exhibit A.

8

9      11. Sierra was represented in the negotiation of the Agreement by Andrea Nachtigall.

10      12. Andrea Nachtigall was an agent and attorney with expertise in motion picture rights.

11      13. In the Agreement, Sierra warrants that it "has sole, exclusive, and unencumbered

12 rights of every kind and character" to The River Why.

13      14. In October 1984, Sierra had the right to act as David James Duncan's exclusive agent

14 for the disposition of motion picture rights to The River Why.

15      15. The Agreement required a series of option payments.

16      16. The following option payments were made to Sierra:

17           a. October 1984: $1,250;

18           b. April 1985: $1,250;

19           c. April 1986: $2,500.

20

21      17. Sierra accepted the option payments referenced in the preceding paragraph 16.

22      18. On or about August 15, 1985 Hammermark Productions, Inc. dissolved and assigned

23 all its rights in The River Why and the screenplays based on it to Thomas A. Cohen, the

24 president and sole shareholder of Hammermark Productions, Inc. Cohen continued to do

25 business as Hammermark Productions, a sole proprietorship.

Verified Complaint for Declaratory Judgment—page 3

19. On or about May 7, 1987, Sierra agreed to extend the option period for an additional twelve months, to October 16, 1988, subject to payment of an additional $2,000.

20. A true and correct copy of the May 7, 1987 letter agreement extending the option period is attached as Exhibit B.

21. In October 1987, Sierra accepted an option payment of $2,000.

22. On or about October 12, 1988, Sierra was paid $13,547.65 for the exercise of the purchase of motion picture rights to The River Why.

23. A true and correct copy of the letter and the check exercising the option and thereby purchasing the motion picture rights is attached as Exhibit C.

24. On or about October 27, 1988, Sierra wrote Thomas A. Cohen of Hammermark Productions confirming that he had met the terms of the Agreement.

25. A true and correct copy of Sierra's October 27, 1988 letter is attached as Exhibit D.

26. Beginning in October 1984, Thomas A. Cohen began developing a movie based on The River Why. This included, *inter alia,* creation of a screenplay and a budget, scouting locations and contacting actors and others to participate in the movie.

27. In 1988, Thomas A. Cohen established River Why Partners, a publicly registered limited partnership, designed to raise financing for a movie based on The River Why.

28. River Why Partners was not able to attract sufficient funding.

29. In 2004, Thomas A. Cohen, pursuant to paragraph 9 of the Agreement, assigned his rights in The River Why and the screenplays based on it to Peloton Productions, which is owned by his wife, Kristi Denton Cohen. A true and correct copy of the assignment is attached as Exhibit E.

30. Peloton subsequently began to actively develop the project including commissioning

Verified Complaint for Declaratory Judgment—page 4

1    a rewrite of the screenplay, affiliating with a Los Angeles production company, selecting a

2    director, meeting with actors, and creating a budget and shooting schedule. In 2007, Peloton

3    enlisted a major investor and drafted a private placement memorandum for the purposes of

4    raising the remaining funds necessary to start production. The anticipated start date was

5    September 2007 with pre-production to begin in July or earlier.

6       31. On April 3, 2007, Duncan's attorney delivered a letter to Peloton demanding that it

7    "cease and desist all or any activity with respect to the preparation of derivative works of the

8    novel The River Why." The letter further states: "Mr. Duncan hereby terminates in its entirety

9    the October 2, 1984 Agreement and all exhibits, amendments, extensions and any and all other

10  

11    terms associated therewith." A true and correct copy of the letter is attached as Exhibit F.

12       32. Duncan's notice to cease and desist has caused Peloton to be uncertain of its rights

13    regarding The River Why and has disrupted pre-production and production activities.

14       33. Sierra refuses to confirm Peloton's motion picture rights to The River Why.

15       WHEREFORE, Peloton requests that the Court enter a judgment:

16       1. Declaring that the October 1984 Agreement between Hammermark Productions, Inc.

17    and Sierra Club is valid and binding on all parties and their assignees and successors in interest;

18       2. Declaring that, subject only to further contingent payments (in the event that the

19    budget exceeds $500,000) as set forth in the October 1984 Agreement, Peloton is the owner of

20    the motion picture rights to the novel The River Why written by David James Duncan.

21       3. Awarding Peloton its reasonable costs and attorneys' fees in bringing this action; and

22  

23       4. Granting Peloton such other relief as the Court deems just and proper.

24    Dated: July 31, 2007

25                                 Lizbeth Hasse
                                   Attorney for the Plaintiff

Verified Complaint for Declaratory Judgment—page 5

## VERIFICATION

I, Kristi Denton Cohen, declare under penalty of perjury of the laws of the State of California that this Verified Complaint For Declaratory Judgment is true of my own knowledge, except as to the matters which are therein stated on information and belief, and as to those matters that I believe it to be true.

Dated: 7/31/07

Kristi Denton Cohen
Peloton Productions

Verified Complaint for Declaratory Judgment—page 6

# HAMMERMARK

October 2, 1984

Ms. Andrea Nachtigall
1885 Lombard St.
San Francisco, CA. 94123

Dear Andrea:

This letter, when signed by your client Sierra Club
Books,("Seller") comprises our agreement with regard to the
motion picture rights  in the original literary work entitled
"The River Why" by David James Duncan (the "Work").

1. Seller warrants to Hammermark Productions, Inc. ("Hammermark"),
that Seller has the sole, exclusive, and unencumbered ownership of
all rights of every kind and character throughout the world in
the Work.

2. Seller hereby grants to Hammermark the exclusive and
irrevocable right and option, for the period specified below, to
purchase and acquire the motion picture, television, and allied
rights in the work (collectively, the "Rights") for the purchase
price and upon the terms and conditions specified herein. These
rights are more fully described by Exhibit A to this agreement
and incorporated by this reference.

3. The option shall be effective during the period commencing on
the date Seller executes this agreement and ending at midnight
twelve (12) months thereafter. If a screenplay based on the Work
is written before the option period expires then the option
period will be extended, for no additional consideration, for six
(6) months for a total option period of eighteen (18) months.

4. In consideration of the grant by Seller of the within option,
Hammermark shall pay $1,250 on execution of this agreement, and
$1,250 in six months.

5. If a screenplay is written, the option period may be extended
for an additional eighteen months upon payment of an
additional $2,500. Any consideration paid for option rights (per
paragraphs 4 or 5) shall be credited against the final purchase
price.

6. In consideration of the sale and conveyance from Seller to
Hammermark of the Motion Picture, Television, and Allied Rights
in the event such option is excercised, Hammermark shall pay to
Seller (one third on excercise and two thirds on commencement of
photography) the amounts listed below.

sound recorded synchronously therewith, whether the same is produced on film or magnetic or video tape or wire or any other substance or by any other method of recording, whether after use for the production, exhibition, or transmission of any kind of television production, and whether the same is produced initially for television exhibition or transmission or otherwise.

Page 1 of 4

A. If the budget for the motion picture exceeds $500,000 in miscellaneous costs, then the purchase price shall be five percent (5%) of the budget with a minimum price of $25,000 and a maximum of $200,000. Additionally, Seller shall receive two and one half percent (2 1/2%) of one hundred percent of the net profits of the motion picture.

B. If the budget for the motion picture is below $500,000 in direct cash costs, then the purchase price shall be $12,500. Additionally, Seller shall receive five percent (5%) of one hundred percent of the net profits of the motion picture.

7. The definition of net profits will be no less favorable to the Seller than to other profit participants.

8. The Sierra Club name may not be used in connection with advertising or promotion of the motion picture or with related merchandise without the express consent of the Seller, which consent will not be unreasonably withheld.

9. Hammermark and Seller may transfer or assign their rights under this agreement without the prior consent of the other party.

If the foregoing is acceptable to you, kindly indicate your approval by signing and returning the enclosed duplicate original of this letter for my file.

HAMMERMARK PRODUCTIONS, INC.,
a California corporation

By _____
    Thomas A. Cohen
    Its President

Accepted and Agreed this 17
day of _October_____, 1934

_____

Addendum: See Exhibit A page 4

Enclosure: Exhibit A

# HAMMERMARK

October 2, 1984

Ms. Andrea Nachtigall
1835 Lombard St.
San Francisco, CA. 94123

Dear Andrea:

This letter, when signed by your client Sierra Club
Books,("Seller") comprises our agreement with regard to the
motion picture rights  in the original literary work entitled
"The River Why" by David James Duncan (the "Work").

1. Seller warrants to Hammermark Productions, Inc. ("Hammermark"),
that Seller has the sole, exclusive, and unencumbered ownership of
all rights of every kind and character throughout the world in
the Work.

2. Seller hereby grants to Hammermark the exclusive and
irrevocable right and option, for the period specified below, to
purchase and acquire the motion picture, television, and allied
rights in the work (collectively, the "Rights") for the purchase
price and upon the terms and conditions specified herein. These
rights are more fully described by Exhibit A to this agreement
and incorporated by this reference.

3. The option shall be effective during the period commencing on
the date Seller executes this agreement and ending at midnight
twelve (12) months thereafter. If a screenplay based on the Work
is written before the option period expires then the option
period will be extended, for no additional consideration, for six
(6) months for a total option period of eighteen (18) months.

4. In consideration of the grant by Seller of the within option,
Hammermark shall pay $1,250 on execution of this agreement, and
$1,250 in six months.

5. If a screenplay is written, the option period may be extended
for an additional eighteen months upon payment of an
additional $2,500. Any consideration paid for option rights (per
paragraphs 4 or 5) shall be credited against the final purchase
price.

6. In consideration of the sale and conveyance from Seller to
Hammermark of the Motion Picture, Television, and Allied Rights
in the event such option is excercised, Hammermark shall pay to
Seller (one third on excercise and two thirds on commencement of
photography) the amounts listed below

contemplated therein, then the purchase price, five percent (5%) of the budget with a minimum price of $25,000 and a maximum of $200,000. Additionally, Seller shall receive two and one half percent (2 1/2%) of one hundred percent of the net profits of the motion picture.

B. If the budget for the motion picture is below $500,000 in direct cash costs, then the purchase price shall be $12,500. Additionally, Seller shall receive five percent (5%) of one hundred percent of the net profits of the motion picture.

7. The definition of net profits will be no less favorable to the Seller than to other profit participants.

8. The Sierra Club name may not be used in connection with advertising or promotion of the motion picture or with related merchandise without the express consent of the Seller, which consent will not be unreasonably withheld.

9. Hammermark and Seller may transfer or assign their rights under this agreement without the prior consent of the other party.

If the foregoing is acceptable to you, kindly indicate your approval by signing and returning the enclosed duplicate original of this letter for my file.

HAMMERMARK PRODUCTIONS, INC.,
a California corporation

By_____

Thomas A. Cohen
Its President

Accepted and Agreed this 17
day of __October__, 1984

_____

Enclosure: Exhibit A

Addendum: See Exhibit A page 4

## Exhibit A

## Motion Picture, Television, and Allied Rights

Exhibit to that certain Letter Agreement, dated
__Oct 2__, 198_, by and between Hammermark Productions,
Inc. ("Hammermark"), a California corporation, and
__Sierra Club Books__.

1. All motion picture rights including, but not limited to, the rights to produce, project, exhibit, broadcast, and transmit an unlimited number of motion pictures (including without limitation "remake" and "sequel" motion pictures, as said terms are commonly understood in the United States motion picture industry), theatrically, non-theatrically, on television, by means of cassettes and cartridges, and in all other media, now or hereafter known, and in all gauges and sizes. The term "motion picture," or words of similar import, as used in this Exhibit, shall be deemed to mean and include any present or future kind of motion picture in any gauge, without or with sound recorded synchronously therewith, whether the same is produced on film or magnetic or video-tape or wire or any other substance or by any other method or means now or hereafter used for the production, exhibition, or transmission of any kind of motion picture, and whether the same is produced initially for theatrical, non-theatrical, or television exhibition or transmission or otherwise. The first motion picture produced hereunder is sometimes hereinafter referred to as "the Motion Picture."

2. All television rights including, but not limited to, the rights to produce, project, exhibit, broadcast, and transmit an unlimited number of television productions (including without limitation "series" and "specials," as such terms are commonly understood in the United States television industry), on television and in all other media now or hereafter known and in all gauges. The term "television production," or words of similar import, as used in this Exhibit, shall be deemed to mean and include any present or future kind of television production without or with sound recorded synchronously therewith, whether the same is produced on film or magnetic or video tape or wire or any other substance or by any other method or means now or hereafter used for the production, exhibition, or transmission of any kind of television production, and whether the same is produced initially for television exhibition or transmission or otherwise.

3.   The Rights shall include, without limitation, the rights to:

a.   use, adapt, translate, subtract from, add to, and change the Work and the title thereof, or any other title by which it (or any part thereof) has been or may at any time be known, in the making of motion pictures and television productions as a part of or in conjunction with any such motion picture and television production or both;

b.   combine the Work in any manner with any other work or works in the making of motion pictures and television productions;

c.   use the Work and any part thereof, including without limitation the characters contained therein, and said titles and any similar titles, in conjunction with motion pictures and television productions based upon all or any part or parts of the Work or other literary, dramatic, or dramatico-musical works, or a combination thereof, or in conjunction with musical compositions used for or in connection with such motion pictures and television-productions, whether or not written for, or used in, or in connection with, or in any manner whatsoever apart from, any such motion pictures and television productions;

d.   project, transmit, exhibit, broadcast, and otherwise reproduce the Work and any part or parts thereof pictorially and audibly by the art of cinematography or any process analogous thereto in any manner, including the right to project, transmit, reproduce, and exhibit motion pictures and television productions and any part or parts thereof (including without limitation, by so-called "pay," "free," "free home," "closed circuit," "theatre," "toll," "CATV," or "subscription" television), and by the use of cartridges, cassettes, or other devices similar or dissimilar, and by so-called "EVR," "Cartrivision" or other similar systems and by any other process of transmission now known or hereafter to be devised;

e.   publish, use, copyright, vend, license, exhibit, perform and otherwise exploit, and license others to publish, use, copyright, vend, license, exhibit, perform and otherwise exploit, such motion pictures and television productions and the scripts of the same and such musical compositions and any part thereof;

f.   record, reproduce, and transmit sound, including spoken words, dialogue, music, and songs, by any manner or means (including mechanical and electrical means

5.   The right to broadcast and transmit by radio and television excerpts from and condensations of the Work or any motion pictures and television productions produced pursuant hereto, or both; but, with respect to such broadcasts on radio, then only for advertising and exploitation purposes, each not to exceed 10 minutes in length.

6.   Solely for the purposes of advertising and exploiting the rights granted to Hammermark hereunder, the right to use, and to license, cause, or permit others to use, the Work's author's name, portrait, picture or likeness, and biographical data.

*   *   *   *   *

ADDENDUM

A. Credit:
If the title of the film is the same as the title of the book:  "Based on the book by David James Duncan."

If the title of the film is different from the title of the book:  "Based on The River Why by David James Duncan."

B. Anything not specifically referred to herein shall be negotiated in good faith.

Page 4 of 4

and any other means now known or hereafter developed), whether extracted from or based upon the Work or otherwise, and to interpolate other spoken words, dialogue, music, and songs, in or in connection with or as part of the production, reproduction, transmission, exhibition, performance, or presentation of such motion pictures and television productions;

g. make, copyright, use, vend, license and otherwise exploit, and license others to make, copyright, use, vend, license and otherwise exploit, in any manner, records, tapes and other sound-reproducing devices based in whole or in part on such motion pictures and television productions or such musical compositions, or any part or parts thereof, including the right to use the title of the Work and any similar titles in connection therewith;

h. make, copyright, use, vend, license, and otherwise exploit, and license others to make, copyright, use, vend, license, and otherwise exploit, in any manner, records, tapes, and other sound-reproducing devised based in whole or in part on the Work, or any part or parts thereof;

i. arrange for any and all merchandising and commercial tie-ups of any sort and nature arising out of or connected with the Work and/or the title thereof, the characters contained therein, or said motion pictures and television productions, or any combination thereof; and

j. generally to produce, reproduce, remake, reissue, transmit, exhibit, and perform motion pictures and television productions of any and all kinds.

4. The right, but only for purposes of advertising and exploiting motion pictures and television productions, to make, publish and copyright, or cause to be made, published, and copyrighted, in the name of Hammermark or its nominees, in any and all languages, excerpts from the Work and synopses, scenarios and other versions of the Work and of any motion pictures or television productions made pursuant to this Exhibit (each not exceeding 7,500 words in length), with or without illustrations of any type or kind whatsoever, on condition that then existing copyrights in the Work shall not thereby become invalidated. No use by Hammermark of the name of the author of the Work shall be made in connection with any of the foregoing in such manner as would indicate that he is the author of any such synopses, scenarios, or other versions. The author of the Work shall be appropriately indicated, however, to be the author of the Work.

Page 3 of 4

Box 5202
                                        Mill Valley, California 94942
                                              (415) 383 4866

# HAMMERMARK

May 7, 1987

Mr. Jon Beckman
Sierra Club Books
730 Polk St.
San Francisco, CA 94109

Dear Jon,

This will confirm our conversation yesterday in which you agreed to extend the option on the motion picture rights to "The River Why" under the following terms and conditions:

1. The terms and conditions of our original agreement for those rights executed by you on October 17, 1984 remain unchanged.

2. At my option, the term of the agreement may be extended for an additional twelve months beginning October 17, 1987.

3. In consideration of the extension on the option period (per 2 above), Hammermark Productions shall pay $2,000, which sum shall be credited against the final purchase price.

If this is your understanding of the agreement, kindly indicate your approval by signing and returning the enclosed duplicate original of this letter for my file.

HAMMERMARK PRODUCTIONS

By _____
    Its President


Accepted and Agreed this _____ day
of _____, 1987

_____
    For Sierra Club Books

p. 2
p.8

415-383-8431

Kristi Denton Cohen

Apr 04 07 11:34a

Jul 31 07 07:14p

## RIVER WHY PARTNERS
### P.O. BOX 5002 · MILL VALLEY, CA · 94942
### (415) 383-4866

October 12, 1986

Mr. Jon Beckman
Sierra Club Books
730 Polk St.
San Francisco, CA 94109

Dear Jon:

Enclosed is my check number 5897 for $13,547.65 for the exercise
of the purchase of motion picture and allied rights to THE RIVER
WHY. Pursuant to our contract dated October 17, 1984, this
represents the balance of the one third of the funds due.

My calculations are based on a proposed budget for the movie,
exclusive of rights payments, of $1,234,093. Per our agreement,
five percent of that figure is $61,704.65, and one third of that
is $20,547.55. Since previous option payments totaling $7,000 are
to be credited against that amount, the enclosed check brings the
total payment to that required by the contract. The remaining two
thirds will be paid on commencement of photography, which I hope
will be next Summer.

Please note that it is still possible that I may try to mount the
film for under $500,000 in which case the total rights payment is
to be $12,500. I expressly reserve the right to receive a refund
from you of $8,047.65 in that event.

I look forward to seeing you at the movies.

Sincerely yours,

Thomas A. Cohen
General Partner

SENT BY: ;                    415 777 1990;        MAR-22-05  :38PM;        PAGE 7/7

# Sierra Club Books

730 Polk Street
San Francisco, California 94109
(415) 776-2211
Telex: 183652 MACKLUNK USA

October 27, 1988

Mr. Thomas A. Cohen
Hammermark Productions
P.O. Box 5002
Mill Valley, CA   94942

Dear Tom:

     After returning from three weeks on the road, I have found
your check and letter with respect to The River Why. You have
met the terms of the contract, and we all hope that the movie will
be an award-winner, despite the author's apprehensions. We look
forward to learning more about the shooting schedule, casting,
etc.

     I have no questions about the arithmetic, but I don't see
anything in our agreement that relates to a refund. In any case,
we wish you well with the production, and hope that it will be
a smashing success.

Sincerely,

Jon Beckmann
Publisher

JB:dg

cc:  Daniel Moses

Jul 31 07:15p         Kristi Denton Cohen         415-333-5431         p.12

415-333-5431                                            p.6
                                                        p.12

EXHIBIT 2

1   Lizbeth Hasse (#104517)
    Creative Industry Law Group
2   526 Columbus Ave., 2nd floor
    San Francisco, CA 94133
3   (415) 433-4380

4
    Thomas A. Cohen (#154581)
5   Law Offices of Thomas A. Cohen
    639 Front St., 4th floor
6   San Francisco, CA 94111
    (415) 777-1997
7
    Attorneys for Plaintiff
8   Peloton Productions



**F I L E D**
San Francisco County Superior Court

OCT 1 2 2007

GORDON PARK-LI, Clerk
BY: _Marjia Schwartz Swift_
                              Deputy Clerk

9

10              SUPERIOR COURT OF THE STATE OF CALIFORNIA

11                    FOR THE COUNTY OF SAN FRANCISCO

12

13   PELOTON PRODUCTIONS, a sole            Case No.: CGC 07-465687
     proprietorship owned by Kristi Denton Cohen,
14                                          (~~proposed~~)
15              Plaintiff,                  ORDER OVERRULING DEMURRER

16        vs.                              Date: October 12, 2007
                                           Time: 9:30 a.m.
17   SIERRA CLUB,                          Dept.: 302

18              Defendant

19

20        Sierra Club's demurrer came on regularly for hearing.  The case was originally signed to

21   Department 301, but the Honorable Peter J. Busch recused himself and the matter was

22   transferred to Department 302.

23        The Court, having considered the arguments of counsel, the pleadings on file in this

24   matter and good cause appearing,

25

1

IT IS ORDERED that Sierra Club's demurrer is overruled. No judgment in this action

2

would bind David James Duncan, and therefore he is neither a necessary nor indispensable

3

party. Plaintiff takes the risk that Mr. Duncan will file a claim, but that is a risk that plaintiff is

4

willing to take.

5

Sierra Club shall have ten days from today's date, October 12, 2007, to file and serve an

6

answer to the Complaint.

7

8

Dated: October 12, 2007

9

10

11

Patrick Mahoney
Judge of the Superior Court

12

13

14

Approved as to form:

15

*Case # 465 687*
*Peloton Prods vs Sierra Club*

16

17

Thomas R. Burke
Attorney for Sierra Club

18

19

20

21

22

23

24

25

EXHIBIT 3

1  Lizbeth Hasse (#104517)
   Creative Industry Law Group
2  526 Columbus Ave., 2nd floor
   San Francisco, CA 94133
3  (415) 433-4380

4
   Thomas A. Cohen (#154581)
5  Law Offices of Thomas A. Cohen
   639 Front St., 4th floor
6  San Francisco, CA 94111
   (415) 777-1997
7

8  Attorneys for Plaintiff
   Peloton Productions

9

10            SUPERIOR COURT OF THE STATE OF CALIFORNIA

11               FOR THE COUNTY OF SAN FRANCISCO

12

13  PELOTON PRODUCTIONS, a sole            Case No.: CGC 07-465687
    proprietorship owned by Kristi Denton Cohen,
14                                         (proposed) (JCR)
                                           ORDER FOR ENTRY OF STIPULATED
15            Plaintiff,                    JUDGMENT

16       vs.                               Date:  November 28, 2007
                                           Time:  11:00 a.m.
17  SIERRA CLUB,                           Dept.: 302

18            Defendant

19

20       The Court having considered the Ex Parte Application by plaintiff Peloton Productions

21  for an Order for Entry of Stipulated Judgment, and good cause appearing, hereby orders the

22  entry of the attached Stipulated Judgment.

23       Dated: November 26, 2007
                        28
24                                         PATRICK J. MAHONEY

25                                         _____
                                           Patrick Mahoney
                                           Judge of the Superior Court

Order for Entry of Stipulated Judgment—page 1

ENDORSED
FILED
San Francisco County Superior Court

NOV 28 2007

GORDON PARK-LI, Clerk
BY: _____JOCELYN C. ROQUE_____
                        Deputy Clerk

1    Lizbeth Hasse (#104517)
     Creative Industry Law Group
2    526 Columbus Ave., 2nd floor
     San Francisco, CA 94133
3    (415) 433-4380

4    Thomas A. Cohen (#154581)
     Law Offices of Thomas A. Cohen
5    639 Front St., 4th floor
     San Francisco, CA 94111
6    (415) 777-1997

7
     Attorneys for Plaintiff
8    Peloton Productions

9

ENDORSED
F I L E D
San Francisco County Superior Court

NOV 28 2007

GORDON PARK-LI, Clerk
BY: _____JOCELYN C. ROQUE_____
                              Deputy Clerk

10              SUPERIOR COURT OF THE STATE OF CALIFORNIA

11                   FOR THE COUNTY OF SAN FRANCISCO

12

13   PELOTON PRODUCTIONS, a sole             Case No.: CGC 07-465687
     proprietorship owned by Kristi Denton Cohen,
14
                                             STIPULATED JUDGMENT
15           Plaintiff,

16       vs.

17   SIERRA CLUB,

18           Defendant

19

20       This Stipulated Judgment was prepared by and through counsel of record for the parties

21   to this action, plaintiff Peloton Productions was represented by its attorneys, Lizbeth Hasse and

22   Thomas A. Cohen, defendant Sierra Club was represented by Thomas R. Burke of Davis

23   Wright Tremaine LLP.

24

25

Stipulated Judgment—page 1

By and through their attorneys of record, Plaintiff Peloton Productions, a sole proprietorship owned by Kristi Denton Cohen and Defendant Sierra Club (collectively, the "Parties") consent to entry of this Stipulated Judgment without a noticed motion, hearing or trial. The Parties having stipulated to the provisions set forth herein and the issuance of this Stipulated Judgment, the Court having reviewed the  provisions and good cause appearing finds:

1. In October 1984, Hammermark Productions, Inc. entered into an agreement regarding a motion picture to be based on author David James Duncan's novel, The River Why, published by Sierra Club (hereafter the "Agreement."). A true and correct copy of the Agreement is attached hereto as Exhibit A. In 2004, Hammermark's successor in interest, Thomas A. Cohen, assigned his interests in The River Why and the screenplays based on it to Peloton Productions, which is owned by his wife, Kristi Denton Cohen.

2. On April 3, 2007, Duncan's attorney delivered a letter to Peloton demanding that it "cease and desist all or any activity with respect to" The River Why.  The letter further states: "Mr. Duncan hereby terminates in its entirety the October 2, 1984 Agreement and all exhibits, amendments, extensions and any and all other terms  associated therewith."

3. On or about July 31, 2007, Peloton filed a verified complaint against Sierra Club only, seeking a declaration from this Court that the Agreement is valid and binding. Sierra Club demurred on the grounds that Mr. Duncan was a necessary or indispensable party and should have been included in the lawsuit.

4. Peloton opposed the demurrer on the grounds that Duncan is not a party to the Agreement, and that only the parties to a contract may rescind or terminate it. Sierra Club's demurrer was overruled by the Honorable Patrick Mahoney on October 12, 2007, who stated: "No judgment in this action would bind David James Duncan, and therefore he is neither a

1   necessary nor indispensable party. Plaintiff takes the risk that Mr. Duncan will file a claim, but

2   that is a risk that plaintiff is willing to take."

3       5. Sierra Club then filed a verified answer which admitted that it was the publisher of the

4   novel, that it entered into an Agreement with Peloton's predecessor in interest for the motion

5   picture rights, and that it was represented in those negotiations by an agent with expertise in

6   motion picture rights. Sierra Club's verified answer admitted that in the Agreement it warrants

7   that it "has sole, exclusive, and unencumbered ownership of all rights of every kind and

8   character" to the novel and that it had the right to act as the author's exclusive agent for the

9   disposition of motion picture rights to The River Why. Sierra Club admitted that it was paid for

10  the exercise of the option and, on October 27, 1988, wrote a letter confirming that the terms of

11  the Agreement had been met.

12      In consideration of the pleadings filed in this action and these stipulated facts, the Court

13  HEREBY ORDERS, ADJUDGES AND DECREES:

14      1. The October 1984 Agreement between Hammermark Productions, Inc. and Sierra

15  Club is valid and binding on all parties and their assignees and successors in interest;

16      2. Subject only to further contingent payments as set forth in the October 1984

17  Agreement, Peloton is the owner of the motion picture rights to the novel The River Why

18  written by David James Duncan; and

19      3. Each party is to bear its own attorneys' fees and costs.

20  ///

21  ///

22  ///

23

24

25

Dated: Nov. 21, 2007

By: _Laura Hrelim General Counsel_
Sierra Club

Dated: November 26, 2007

_Thomas R. Burke_
Thomas R. Burke
Davis Wright Tremaine LLP
Attorneys for Sierra Club

Dated:
November 26, 2007

_Kristi Denton Cohen_
Kristi Denton Cohen
Peloton Productions

Dated: November 26, 2007

_Thomas A. Cohen_
Thomas A. Cohen
Attorney for Peloton Productions

IT IS SO ORDERED.

Dated:

**NOV 2 8 2007**

PATRICK J. MAHONEY

_Patrick Mahoney_
Patrick Mahoney
San Francisco Superior Court Judge

Exhibit A

# HAMMERMARK

October 2, 1984

Ms. Andrea Nachtigall
1885 Lombard St.
San Francisco, CA. 94123

Dear Andrea:

This letter, when signed by your client Sierra Club
Books, ("Seller") comprises our agreement with regard to the
motion picture rights in the original literary work entitled
"The River Why" by David James Duncan (the "Work").

1. Seller warrants to Hammermark Productions, Inc. ("Hammermark"),
that Seller has the sole, exclusive, and unencumbered ownership of
all rights of every kind and character throughout the world in
the Work.

2. Seller hereby grants to Hammermark the exclusive and
irrevocable right and option, for the period specified below, to
purchase and acquire the motion picture, television, and allied
rights in the work (collectively, the "Rights") for the purchase
price and upon the terms and conditions specified herein. These
rights are more fully described by Exhibit A to this agreement
and incorporated by this reference.

3. The option shall be effective during the period commencing on
the date Seller executes this agreement and ending at midnight
twelve (12) months thereafter. If a screenplay based on the Work
is written before the option period expires then the option
period will be extended, for no additional consideration, for six
(6) months for a total option period of eighteen (18) months.

4. In consideration of the grant by Seller of the within option,
Hammermark shall pay $1,250 on execution of this agreement, and
$1,250 in six months.

5. If a screenplay is written, the option period may be extended
for an additional eighteen months upon payment of an
additional $2,500. Any consideration paid for option rights (per
paragraphs 4 or 5) shall be credited against the final purchase
price.

6. In consideration of the sale and conveyance from Seller to
Hammermark of the Motion Picture, Television, and Allied Rights
in the event such option is exercised, Hammermark shall pay to
Seller (one third on excercise and two thirds on commencement of
photography) the amounts listed below.

A. ~~the~~ motion picture ~~exceeds $500,000 in direct cash costs~~, then the purchase price shall be a minimum price of $25,000 and a maximum (5%) of the budget with a minimum price of $25,000 and a maximum of $200,000. Additionally, Seller shall receive two and one half percent (2 1/2%) of one hundred percent of the net profits of the motion picture.

B. If the budget for the motion picture is below $500,000 ~~in direct cash costs~~, then the purchase price shall be $12,500. Additionally, Seller shall receive five percent (5%) of one hundred percent of the net profits of the motion picture.

7. The definition of net profits will be no less favorable to the Seller than to other profit participants.

8. The Sierra Club name may not be used in connection with advertising or promotion of the motion picture or with related merchandise without the express consent of the Seller, which consent will not be unreasonably withheld.

9. Hammermark and Seller may transfer or assign their rights under this agreement without the prior consent of the other party.

If the foregoing is acceptable to you, kindly indicate your approval by signing and returning the enclosed duplicate original of this letter for my file.

HAMMERMARK PRODUCTIONS, INC.,
a California corporation

By_____
        Thomas A. Cohen
        Its President

Accepted and Agreed this **17**
day of_____October_____, 198**4**

_____

Enclosure: Exhibit A

Addendum: See Exhibit A page 4

Exhibit A

Motion Picture, Television, and Allied Rights

Exhibit to that certain Letter Agreement, dated Oct 2 , 198 , by and between Hammermark Productions, Inc. ("Hammermark") a California corporation, and Sierra Club Books.

1.  All motion picture rights including, but not limited to, the rights to produce, project, exhibit, broadcast, and transmit an unlimited number of motion pictures (including without limitation "remake" and "sequel" motion pictures, as said terms are commonly understood in the United States motion picture industry), theatrically, non-theatrically, on television, by means of cassettes and cartridges, and in all other media, now or hereafter known, and in all gauges and sizes. The term "motion picture," or words of similar import, as used in this Exhibit, shall be deemed to mean and include any present or future kind of motion picture in any gauge, without or with sound recorded synchronously therewith, whether the same is produced on film or magnetic or video tape or wire or any other substance or by any other method or means now or hereafter used for the production, exhibition, or transmission of any kind of motion picture, and whether the same is produced initially for theatrical, non-theatrical, or television exhibition or transmission or otherwise. The first motion picture produced hereunder is sometimes hereinafter referred to as "the Motion Picture."

2.  All television rights including, but not limited to, the rights to produce, project, exhibit, broadcast, and transmit an unlimited number of television productions (including without limitation "series" and "specials," as such terms are commonly understood in the United States television industry), on television and in all other media now or hereafter known and in all gauges. The term "television production," or words of similar import, as used in this Exhibit, shall be deemed to mean and include any present or future kind of television production without or with sound recorded synchronously therewith, whether the same is produced on film or magnetic or video tape or wire or any other substance or by any other method or means now or hereafter used for the production, exhibition, or transmission of any kind of television production, and whether the same is produced initially for television exhibition or transmission or otherwise.

3.    The Rights shall include, without limitation, the rights to:

a.    use, adapt, translate, subtract from, add to, and change the Work and the title thereof, or any other title by which it (or any part thereof) has been or may at any time be known, in the making of motion pictures and television productions as a part of or in conjunction with any such motion picture and television production or both;

b.    combine the Work in any manner with any other work or works in the making of motion pictures and television productions;

c.    use the Work and any part thereof, including without limitation the characters contained therein, and said titles and any similar titles, in conjunction with motion pictures and television productions based upon all or any part or parts of the Work or other literary, dramatic, or dramatico-musical works, or a combination thereof, or in conjunction with musical compositions used for or in connection with such motion pictures and television productions, whether or not written for, or used in, or in connection with, or in any manner whatsoever apart from, any such motion pictures and television productions;

d.    project, transmit, exhibit, broadcast, and otherwise reproduce the Work and any part or parts thereof pictorially and audibly by the art of cinematography or any process analogous thereto in any manner, including the right to project, transmit, reproduce, and exhibit motion pictures and television productions and any part or parts thereof (including without limitation, by so-called "pay," "free," "free home," "closed circuit," "theatre," "toll," "CATV," or "subscription" television), and by the use of cartridges, cassettes or other devices similar or dissimilar, and by so-called "EVR," "Cartrivision" or other similar systems and by any other process of transmission now known or hereafter to be devised;

e.    publish, use, copyright, vend, license, exhibit, perform and otherwise exploit, and license others to publish, use, copyright, vend, license, exhibit, perform and otherwise exploit, such motion pictures and television productions and the scripts of the same and such musical compositions and any part thereof;

f.    record, reproduce, and transmit sound, including spoken words, dialogue, music, and songs, by any manner or means (including mechanical and electrical means




and any other means now known or hereafter developed), whether extracted from or based upon the Work or otherwise, and to interpolate other spoken words, dialogue, music, and songs, in or in connection with or as part of the produc-tion, reproduction, transmission, exhibition, performance, or presentation of such motion pictures and television productions;

g. make, copyright, use, vend, license and otherwise exploit, and license others to make, copyright, use, vend, license and otherwise exploit, in any manner, records, tapes and other sound-reproducing devices based in whole or in part on such motion pictures and television pro-ductions or such musical compositions, or any part or parts thereof, including the right to use the title of the Work and any similar titles in connection therewith;

h. make, copy-right, use, vend, license, and otherwise exploit, and license others to make, copyright, use, vend, license, and otherwise exploit, in any manner, records, tapes, and other sound-reproducing devised based in whole or in part on the Work, or any part or parts thereof;

i. arrange for any and all merchandising and commercial tie-ups of any sort and nature arising out of or connected with the Work and/or the title thereof, the characters contained therein, or said motion pictures and television productions, or any combination thereof; and

j. generally to produce, reproduce, remake, reissue, transmit, exhibit, and perform motion pictures and television productions of any and all kinds.

4. The right, but only for purposes of advertis-ing and exploiting motion pictures and television produc-tions, to make, publish and copyright, or cause to be made, published and copyrighted, in the name of Hammermark or its nominees, in any and all languages, excerpts from the Work and synopses, scenarios and other versions of the Work and of any motion pictures or television productions made pursuant to this Exhibit (each not exceeding 7,500 words in length), with or without illustrations of any type or kind whatsoever, on condition that then existing copyrights in the Work shall not thereby become invalidated. No use by Hammermark of the name of the author of the Work shall be made in connection with any of the foregoing in such manner as would indicate that he is the author of any such synopses, scenarios, or other versions. The author of the Work shall be appropriately indicated, however, to be the author of the Work.



5.  The right to broadcast and transmit by radio and television excerpts from and condensations of the Work or any motion pictures and television productions produced pursuant hereto, or both; but, with respect to such broadcasts on radio, then only for advertising and exploitation purposes, each not to exceed 10 minutes in length.

6.  Solely for the purposes of advertising and exploiting the rights granted to Hammermark hereunder, the right to use, and to license, cause, or permit others to use, the Work's author's name, portrait, picture or likeness, and biographical data.

*      *      *      *      *

## ADDENDUM

A. Credit:  If the title of the film is the same as the title of the book: "Based on the book by David James Duncan."

If the title of the film is different from the title of the book: "Based on The River Why by David James Duncan."

B. Anything not specifically referred to herein shall be negotiated in good faith.