1  Lizbeth Hasse (#104517)
   Creative Industry Law Group
2  526 Columbus Ave., 2nd floor
   San Francisco, CA 94133
3  (415) 433-4380

4  Thomas A. Cohen (#154581)
   Law Offices of Thomas A. Cohen
5  639 Front St., 4th floor
   San Francisco, CA 94111
6  (415) 777-1997

7  Attorneys for Defendants
8  Thomas A. Cohen dba Hammermark Productions
   Kristi Denton Cohen dba Peloton Productions

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAVID JAMES DUNCAN,<br><br>Plaintiff,<br><br>vs.<br><br>THOMAS A. COHEN d/b/a HAMMERMARK PRODUCTIONS, KRISTI DENTON COHEN d/b/a PELOTON PRODUCTIONS, and SIERRA CLUB BOOKS,<br><br>Defendants | Case No.: CV 08 2243 BZ<br><br>ECF CASE<br><br>DEFENDANTS' REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS COMPLAINT [FRCP12(b)6]; SPECIAL MOTION TO STRIKE UNDER THE ANTI-SLAPP STATUTE.<br>[CCP § 425.16];<br><br>Date: July 23, 2008-Unless Decided on the Pleadings per Order dated May 19, 2008<br>Time: 10 a.m.<br>Courtroom: G |

TABLE OF CONTENTS

I. INTRODUCTION .................................................................................................. 1

II. THE STATE LAW CLAIMS SHOULD BE STRICKEN ...................................... 1

   A. The Anti-SLAPP Statute Applies, at a Minimum, to the Pendent Claims......................... 1

   B. Duncan's State Law Claims Seek Only to Prevent Production of the Film; The Claims Arise Out of Speech That Is a Matter of Public Interest............................................................. 2

   C. The Use Of Duncan's Name on a Website Triggers the Anti-SLAPP Statute ................... 3

   D. Mr. Duncan Has Not Offered Any Admissible Evidence in Support of His Prima Facie Case. His Unverified Complaint Is Not Evidence. ................................................................... 4

III. THE MOTION TO DISMISS THE COPYRIGHT CLAIM MUST BE GRANTED BECAUSE DUNCAN LACKS STANDING AND IS TIME BARRED ................................. 7

   A. Mr. Duncan Cannot Prevail on His Copyright Claim Because He Is Not the Owner of the Motion Picture Rights .................................................................................................. 7

   B. The Validity of the Rights Agreement Does Not Arise Under Copyright and Has Already Been Decided in State Court................................................................................................ 9

   C. Even If Duncan Had Standing and This Court Had Jurisdiction Over the Copyright Claim, The Statute of Limitations Has Run......................................................................... 11

IV. DECLARATORY RELIEF IS NOT AVAILABLE TO MR. DUNCAN ............................ 12

V. THE FRAUD CLAIM FAILS UNDER BOTH 12(B)(6) AND § 425.16............................ 12

   A. The Fraud Allegations Are Simply False............................................................. 12

   B. Mr. Duncan Did Not Personally Rely on Cohen's Representations .............................. 14

   C. Duncan's Fraud Claim Is Time Barred Because He Knew of The "Sham" Budget 20 Years Ago ........................................................................................................... 14

VI. THE CONSPIRACY CLAIM MUST BE DISMISSED ............................................ 15

VII. NOMINATIVE USE OF DUNCAN'S NAME IS APPROPRIATE ........................... 15

# TABLE OF AUTHORITIES

**Federal Cases**

*Borden v. Katzman* (11th Cir. 1989) 881 F.2d 1035, 1038 ......................................................... 10

*Condit v. Nat'l Enquirer, Inc.* (E.D. Cal. 2002) 248 F. Supp. 2d 945, 954 .................................... 5

*Dolch v. United California Bank* (9th Cir. 1983) 702 F.2d 178, 183 .......................................... 10

*Eden Toys, Inc. v. Florelee Undergarment Co.* (2nd Cir. 1982) 697 F.2d 27, 36 .......................... 6

*Entertainment Research v. Genesis Creative Group* (9th Cir. 1997) 122 F.3d 1211, 1228 ......... 15

*Fortnightly Corp. v. United Artists Television, Inc.* (1968) 392 U.S. 390, 395 ............................ 11

*Hal Roach Studios, Inc. v. Richard Feiner & Co.* (9th Cir. 1989) 896 F.2d 1542, 1555 ............. 12

*Knievel v. ESPN* (9th Cir. 2005) 393 F 3d 1068, 1076-1077 ......................................................... 9

*Kourtis v. Cameron* (9th Cir. 2005) 419 F.3d 989, 999 ................................................................. 8

*Magnuson v. Video Yesteryear* (9th Cir. 1996) 85 F.3d 1424, 1428-29 ....................................... 6

*MCA Records, Inc. v. Charly Records* (C.D. Cal. 1994) 865 F. Supp. 649 ................................ 10

*Metabolife Int'l v. Wornick* (9th Cir. 2001) 264 F.3d 832, 846 ................................................. 2, 7

*Moran v. Selig* (9th Cir. 2006) 447 F.3d 748, 759 ......................................................................... 4

*New Kids on the Block v. News America Pub., Inc.* (9th Cir. Cal. 1992) 971 F.2d 302, 308 ....... 15

*Post v. Rumbleseat Press* (7th Cir. 1987) 816 F.2d 1191, 1194 .................................................. 10

*Ritchie v. Williams* (6th Cir. 2005) 395 F.3d 283, 289 ................................................................ 11

*Sakkis v. Artisan Pictures, Inc.* (C.D. Cal. 2008) 2008 U.S. Dist. LEXIS 21724, 11-12 ............. 12

*Siegel v. National Periodical Publications, Inc.* (S.D.N.Y. 1973) 364 F. Supp. 1032 ................ 10

*Silvers v. Sony Pictures Entm't, Inc.* (9th Cir. 2005) 402 F.3d 881 (*en banc*) ...................... 7, 8, 11

*Sobini Films v. Tri-Star Pictures, Inc.* (C.D. Cal. 2001) 61 U.S.P.Q.2D 1930 .............................. 1

*US ex rel. Newsham v. Lockheed Missiles* (9th Cir. 1999) 190 F.3d 963, 973 .............................. 7

*Zuill v. Shanahan* (9th Cir. 1996) 80 F.3d 1366, 1369 ................................................................ 11

**State Cases**

*DuPont Merck Pharm. Co. v. Superior Court* (2000) 78 Cal. App. 4th 562, 568 .......................... 5

*Durgom v. Janowiak* (1999) 74 Cal App 4th 178, 182 ................................................................ 9

*Gawara v. United States Brass Corp.* (1998) 63 Cal. App. 4th 1341, 1349 ................................ 14

*Kidron v. Movie Acquisition* (1995) 40 Cal. App. 4th 1571, 1582. ............................................ 15

*Kronemyer v. Internet Movie Database Inc.* (2007) 150 Cal. App. 4th 941, 949 ..................... 3, 4

*Martinez v. Metabolife Internat. Inc.* (2003) 113 Cal. App. 4th 181, 188 ..................................... 2

*Midland Pacific Building Corp. v. King* (2007) 157 Cal. App. 4th 264, 272 ............................... 2

*Navellier v. Sletten* (2002) 29 Cal. 4th 82, 90-91 ......................................................................... 2

*Paulus v. Bob Lynch Ford, Inc*. (2006) 139 Cal. App. 4th 659, 672-673 ...................................... 5

*Ruiz v. Harbor View Community Assn.* (2005, Cal App 4th Dist) 134 Cal App 4th 1456 ............ 2

**Federal Statutes**

15 U.S.C.A. § 77 ............................................................................................................................ 3

17 U.S.C. § 204(a) ......................................................................................................................... 6

17 U.S.C. § 501(b) ......................................................................................................................... 9

**State Statutes**

Cal. Civ. Code § 3344(e). ............................................................................................................ 15

Calif. Civ. Code § 425.16 ..................................................................................................... passim

**Other Authorities**

3 M. Nimmer & D. Nimmer, Nimmer on Copyright  12.05[C] (2004) ...................................... 11

The Restatement Second of Torts § 533 ...................................................................................... 14

Witkin, California Procedure 4th, Pleading § 687 ....................................................................... 13

# I. INTRODUCTION

The sole purpose of Mr. Duncan's complaint is to enjoin production of a movie. It therefore arises out of speech that is a matter of public interest and is subject to the anti-SLAPP statute. Duncan has failed to present competent admissible evidence in support of his prima facie case on the pendent claims. His unverified complaint is not evidence.

Mr. Duncan cannot prevail on his copyright claim, because he cannot establish ownership of the motion picture rights. There is no federal jurisdiction over a state law contract suit simply because it concerns a copyright. Even if there were federal jurisdiction, the claim for ownership is time barred, and the claim for copyright infringement is barred because there has been no infringing activity in the last three years.

# II. THE STATE LAW CLAIMS SHOULD BE STRICKEN

## A. The Anti-SLAPP Statute Applies, at a Minimum, to the Pendent Claims

Mr. Duncan can only prevail on his copyright and Lanham Act claims if he is able to prove the pendent state law fraud or declaratory relief claims. As enunciated in *Sobini Films v. Tri-Star Pictures, Inc.* (C.D. Cal. 2001) 61 U.S.P.Q.2D 1930 and the other cited cases, declaratory relief is not available to Duncan. Thus, without a valid fraud claim, Duncan has no grounds to attack the validity of the Rights Agreement. If, as the San Francisco Superior Court found, the Rights Agreement is valid, then the Cohens have an absolute defense to the copyright and Lanham Act claims.

Mr. Duncan does not dispute that the anti-SLAPP statute applies to pendent state law claims. Oppo. p. 9 n.2. His argument is only that the statute does not apply to his state law claims because those claims do not arise out of speech and are not a matter of public interest.

### B. Duncan's State Law Claims Seek Only to Prevent Production of the Film; The Claims Arise Out of Speech That Is a Matter of Public Interest

Duncan argues that the anti-SLAPP statute does not apply because there is no causal relationship between the underlying act of speech and the claim for relief. He argues: "these claims are not premised on a film, *they are premised on the absence of one.* Oppo. 10:14-15. Even if this were true, which it is not, this argument destroys Duncan's copyright claim because it is an admission that there have been no infringing acts. He cannot have it both ways. Without infringement, there is no copyright claim. With infringement, the anti-SLAPP statute applies because there is a causal relationship between the infringing activities in producing the film and the claims alleged.

"[I]t is the principal thrust or gravamen of the plaintiff's cause of action that determines whether the anti-SLAPP statute applies . . . ." *Martinez v. Metabolife Internat. Inc.* (2003) 113 Cal. App. 4th 181, 188. The principal thrust of Duncan's complaint is to enjoin production of the Cohen's "version of my novel . . . on a movie screen." Cohen Dec., Ex. H.

The Cohen Defendants are being sued because of actions taken or not taken with respect to the production of a motion picture, which is protected speech. Ignoring the obvious, Duncan strenuously insists that this is a private breach of contract and fraud claim not covered by section 425.16. Oppo. 10:4-5. The California Supreme Court has declined to hold "that section 425.16 does not apply to events that transpire between private individuals." *Navellier v. Sletten* (2002) 29 Cal. 4th 82, 90-91. Conduct alleged to constitute a breach of contract may also come within constitutionally protected speech or petitioning. *Midland Pacific Building Corp. v. King* (2007) 157 Cal. App. 4th 264, 272 (citing *Navellier*, supra, 29 Cal. 4th at 92). Even private letters between individuals were subject to § 425.16 when they concerned ongoing disputes that were of interest to a definable portion of the public. *Ruiz v. Harbor View Community Assn.* (2005, Cal App 4th Dist) 134 Cal App 4th 1456 (523 homeowners).

Here, a definable portion of the public would be impacted by the outcome of the dispute

over Duncan's state law claims. If Duncan succeeds in terminating the Rights Agreement based on state law allegations of fraud, the effect will be not only to chill, but to freeze, the defendants' right to create a movie based on a widely acclaimed novel. Complaint ¶ 1. Moreover, in his November 2005 letter (Ex. H), Mr. Duncan identifies a definable portion of the public who would be impacted by the outcome of this lawsuit: "At home in Oregon I began to run into artists, carpenters, school teachers, fishing guides and such who'd sent in a few hundred hard-earned bucks, in solidarity with me (they thought) . . ." Ads for [River Why] Partners appeared in fly fishing mags, with space donated gratis out of affection for my novel." Clearly, even the act of fundraising for the film is of widespread public interest.

### C. The Use Of Duncan's Name on a Website Triggers the Anti-SLAPP Statute

Mr. Duncan claims that use of his name on a web site violates his right of publicity. He argues that his name is being used in connection with the sale of securities, and as such the anti-SLAPP statute does not apply. But the only use of his name that he can point to is a web page, Exhibit 15, which does not mention, much less imply, that there is a private securities offering or that the web page is being used to solicit investors. It is a violation of SEC and California regulations to publicly solicit investors for a private placement. See 15 U.S.C.A. § 77. There has been no public solicitation of investors for *The River Why* in 20 years.

The use of Duncan's name on defendant's website is almost precisely the issue that was decided in *Kronemyer v. Internet Movie Database Inc.* (2007) 150 Cal. App. 4th 941, 949. There, plaintiff filed an action for declaratory relief against IMDb, a web database of information about movies, asking the court to require IMDb to list him as Executive Producer of *My Big Fat Greek Wedding* and two other films. Appellant argued that his action did not relate to an act in furtherance of the right of free speech because IMDb did nothing in response

to his request to include his producer credits. He characterized his lawsuit as based on defendant's inaction—a failure to speak—rather than conduct or speech. On this reasoning, Kronemyer also argued that there was no act by IMDb that triggered § 425.16. The *Kronemyer* court held that plaintiff's anti-SLAPP defenses had no merit because the gravamen of the lawsuit was the content of IMDb's Web site. The decision not to include material on the website was an act "arising from" protected speech activity." "The listing of credits on [IMDb's] Web site is an act in furtherance of the right of free speech protected under the anti-SLAPP statute. It is, of course, well established that the constitutional right of free speech includes the right not to speak." *Id.* at 947 (citations omitted).

Similarly, Duncan argues here that there was no act in furtherance of the right of free speech because his complaint is premised on inaction--the fact that no film has yet been made by defendants. He also contends that the use of his name on defendant's website is not protected by the anti-SLAPP statute. *Kronemyer* handily disposes of these arguments.

### D. Mr. Duncan Has Not Offered Any Admissible Evidence in Support of His Prima Facie Case. His Unverified Complaint Is Not Evidence.

Incredibly, Mr. Duncan fails to offer a single piece of evidence in support of his prima facie case in opposition to the anti-SLAPP motion. Instead, he puts all his eggs in one basket— hoping that the Court will find that production of a motion picture is not a speech-related activity. Failing that, Duncan's counsel offers this: "[I]t [was] impossible for us to prepare a declaration from Mr. Duncan setting forth his testimony regarding the entire case in such a short period of time." Hurst Declaration ¶ 10. More, plaintiff contends that the Court can rely exclusively on the well-pleaded allegations in the complaint in denying a motion to strike. Oppo. 13:2-4. But Mr. Duncan has not verified his complaint. An unverified complaint cannot be considered evidence. *Moran v. Selig* (9th Cir. 2006) 447 F.3d 748, 759 (summary judgment). Local Rule 7-5(a) requires that "factual contentions made in support of or in

opposition to any motion must be supported by an affidavit or declaration." California law is no different: "The plaintiff [responding to an anti-SLAPP motion] may not rely solely on its complaint, even if verified; instead, its proof must be made upon competent admissible evidence." *Paulus v. Bob Lynch Ford, Inc*. (2006) 139 Cal. App. 4th 659, 672-673 (affirming motion to strike because plaintiff failed to produce prima facie evidence).  See also *DuPont Merck Pharm. Co. v. Superior Court* (2000) 78 Cal. App. 4th 562, 568 ("Substantiation requires something more than [an unverified complaint]")." Duncan's citation to *Condit v. Nat'l Enquirer, Inc*. (E.D. Cal. 2002) 248 F. Supp. 2d 945, 954 is not persuasive. Its entire discussion of whether a complaint is admissible evidence is limited to a single sentence: "At this juncture, accepting as true the well-pleaded allegations of the Complaint, Plaintiff could succeed on the merits." There is no indication in the *Condit* opinion whatsoever as to whether the complaint was verified. Duncan's unverified complaint is not evidence. His prima facie case must fail.

### E.  Defendants Will Prevail Because The Assignments Were All Valid

Duncan contends that the Cohens do not own the exclusive rights to *The River Why* because the assignment documents are invalid. First, every assignment was in writing and recorded with the Copyright Office. Second, even if there had been no written assignments, Duncan cannot challenge them when the parties to those assignments are in perfect agreement.

As Duncan is well aware, every assignment has been recorded with the Copyright office. These are public documents. If Duncan were really concerned about their content, he, like any other member of the public, could access those files. The assignments are attached to Tom Cohen's Reply Declaration. The assignment to Peloton Productions was attached as Exhibit E to the verified complaint in the declaratory relief action.  Plaintiff requests judicial notice of that verified complaint and its exhibits, but mysteriously fails to attach Exhibit E.  In short, Duncan's counsel has seen at least one of the assignments and has Copyright Office reference numbers for all. Ms. Hurst's unfounded assertion that she has repeatedly asked for copies of the assignments that were never provided to her does not advance her argument that

the documents do not exist.  Oppo. 13:25-14:2; Hasse Reply Dec. ¶ 2.  In fact, the verified state court complaint demonstrates quite the opposite.

Duncan's argument that River Why Partners never owned the option it exercised is similarly flawed and beside the point.  The option was exercised by Tom Cohen, individually ("enclosed is *my* check") and paid on his personal checking account.  Ex. F.  River Why Partners never claimed to own the option—rather the rights were to be assigned to it on commencement of photography.  Even if that were not the case, Mr. Cohen was the sole general partner of River Why Partners and could even now, as discussed below, draft and record an assignment between himself and River Why Partners.

There is no requirement that an assignment of copyright interest be contemporaneous.  Ample precedent supports that predated memorializing written documentation may validate an earlier oral agreement retroactively and satisfy statutory requirements. The writing provision of the Copyright Act may not be invoked by a third party as a defense. This is especially true in cases like the present one, where both the original movie rights holder and the transferee have joined together.  "It would be anomalous to permit a third party" to challenge the validity of a transfer instrument where the "copyright holder appears to have little dispute with its licensee" regarding the transfer.  *Magnuson v. Video Yesteryear*  (9th Cir. 1996) 85 F.3d 1424, 1428-29; *Eden Toys, Inc. v. Florelee Undergarment Co.* (2nd Cir. 1982) 697 F.2d 27, 36 (Since the purpose of [17 U.S.C. § 204(a)] is to protect copyright holders from persons mistakenly or fraudulently claiming oral licenses, the "note or memorandum of the transfer" need not be made at the time when the license is initiated; the requirement is satisfied by the copyright owner's later execution of a writing which confirms the agreement.")

### F. The *Erie* Doctrine Cannot Save a Complaint That Is Fatally Defective

Duncan's desire to go on a discovery fishing expedition serves only his effort to prevent the film from being made by tying it up in litigation as long as possible.

The *Erie* doctrine does not prevent the Court from resolving this matter now.

> The twin purposes of the Erie rule - "discouragement of forum-shopping and avoidance of inequitable administration of the law" - favor application of California's Anti-SLAPP statute in federal cases. [] Although Rules 12 and 56 allow a litigant to test the opponent's claims before trial, California's "special motion to strike" adds an additional, unique weapon to the pretrial arsenal, a weapon whose sting is enhanced by a entitlement to fees and costs. Plainly, if the anti-SLAPP provisions are held not to apply in federal court, a litigant interested in bringing meritless SLAPP claims would have a significant incentive to shop for a federal forum. Conversely, a litigant otherwise entitled to the protections of the Anti-SLAPP statute would find considerable disadvantage in a federal proceeding. This outcome appears to run squarely against the "twin aims" of the Erie doctrine.

*US ex rel. Newsham v. Lockheed Missiles* (9th Cir. 1999) 190 F.3d 963, 973 (citations omitted).

*Metabolife Int'l v. Wornick* (9th Cir. 2001) 264 F.3d 832, 846 does not, as Duncan contends, *require* discovery before granting a motion to strike. Rather, such discovery is only necessary when plaintiff's evidence of facts is "uniquely within the Defendants' control." Much of the evidence at issue here is not uniquely within defendants' control. For example, the Publishing Agreement between Duncan and Sierra Club Books is evidence within Duncan's control, and was provided to defendants with his authorization. Declaration of Kristi Denton Cohen, Ex. 1. *Metabolife* is not an invitation to conduct wide ranging discovery in service of Mr. Duncan's desire to entangle the Cohens in "endless legal mire."

### III.  THE MOTION TO DISMISS THE COPYRIGHT CLAIM MUST BE GRANTED BECAUSE DUNCAN LACKS STANDING AND IS TIME BARRED

#### A.  Mr. Duncan Cannot Prevail on His Copyright Claim Because He Is Not the Owner of the Motion Picture Rights

*Silvers v. Sony Pictures Entm't, Inc.* (9th Cir. 2005) 402 F.3d 881 (*en banc*) contains an extensive discussion of standing under the Copyright Act. Under the principles enunciated there, Duncan does not have standing to sue for the infringement of the Cohens' right to make a derivative work. *Silvers* held that the owner of a copyright is not entitled to sue unless the alleged infringement occurred "while he or she [was] the owner of it." Congress' grant of the right to sue was carefully circumscribed. *Id.* at 885.

> This enforced unity of rights [in the 1909 Act] created serious hardships for copyright holders who were interested in assigning the various property rights arising from a copyright separately, for instance selling the motion picture rights in a novel separately from the right to print the novel in book form. [] Congress, aware of these constraints on commercial dealings, largely dispensed with the doctrine of indivisibility in the Copyright Act of 1976. [] Although Congress allowed for divisibility of ownership interests under a copyright, it did not alter the requirement that only owners of an exclusive right in the copyright could bring suit.

*Id.* at 886 (internal citations omitted). Mr. Duncan's theory is apparently that, as the owner of the copyright in the book, he is the copyright proprietor with standing to sue for infringement of any one of the divisible bundle of rights. That is not the law. "Under traditional principles of statutory interpretation, Congress' explicit listing of who may sue for copyright infringement should be understood as an exclusion of others from suing for infringement." *Id.* at 885.

> [E]xclusive rights may be chopped up and owned separately, and each separate owner of a subdivided exclusive right may sue to enforce that owned portion of an exclusive right, no matter how small. For instance, A may own the copyright in a book, while B may own the right to develop the book into a screenplay. A may sue an infringer of the book; B may sue an infringer of the screenplay.

*Id.* at 887. As owner of the copyright in the book, and no longer owner in the copyright in the film rights, Duncan may not sue someone he claims is an infringer of the film rights.

Duncan's reliance on *Kourtis v. Cameron* (9th Cir. 2005) 419 F.3d 989, 999 is badly misplaced. There, plaintiffs were owners of a screenplay suing the producers of *Terminator II* for infringing their screenplay. Using the *Silvers* example, above, the plaintiffs in *Kourtis* were B suing an infringer of the screenplay. By the same token, Duncan is A, not B. He has no standing to sue for infringement of rights he sold. Even if Duncan, not Sierra Club, was the principal behind the Rights Agreement, his claim is against the buyer of the exclusive movie rights and would have to be for breach of contract, not copyright infringement. Here, Cohen is

the exclusive owner of the right to develop The River Why into a screenplay. See Ex. 1, ¶ 2 ("Seller hereby grants to Hammermark the exclusive and irrevocable right . . . ").

Regardless, in order for a plaintiff to be entitled to institute an action, "the infringement must be committed while [he] is the owner of the particular exclusive right allegedly infringed." *Id.* at 885 (quoting 17 U.S.C. § 501(b))(internal quotations omitted). Either Duncan or Sierra Club or both owned the exclusive right to develop the screenplay up until October 1984 when the Rights Agreement was executed. Regardless of what happened after that date, Duncan accepted money collected by Sierra Club in 1984 to convey the rights, and Cohen was the exclusive owner thereafter. There is no allegation, nor can there be, that Cohen infringed the copyright before 1984. Even if there were, such an allegation would be time barred.

Whether Duncan has standing or the Cohens have an affirmative defense of authorization is a distinction without a difference. The Court is free to review the Rights Agreement (the authenticity of which is not disputed) and the San Francisco Superior Court Judgment and conclude that the copyright claim must be dismissed without need for a motion for summary judgment. *Knievel v. ESPN* (9th Cir. 2005) 393 F 3d 1068, 1076-1077.

**B.     The Validity of the Rights Agreement Does Not Arise Under Copyright and Has Already Been Decided in State Court**

This Court has no jurisdiction to determine the validity of the Rights Agreement, because it is a question of contract, not copyright.

The mere fact that a controversy involves a copyright does not give rise to federal jurisdiction. "The word 'copyright' is not so compelling as to invoke federal jurisdiction upon its mere mention. Congress left a considerable residue of power in the state courts to pass on 'copyright questions,' including questions involving constructions of the copyright statute . . . ." *Durgom v. Janowiak* (1999) 74 Cal App 4th 178, 182 (some citations omitted); accord, *Borden*

*v. Katzman* (11th Cir. 1989) 881 F.2d 1035, 1038 ("Contract questions that depend upon common law or equitable principles belong in state court even if they involve copyrights."); *Saturday Evening Post v. Rumbleseat Press* (7th Cir. 1987) 816 F.2d 1191, 1194 ("[A] dispute over the terms of a copyright license is not deemed to arise under the Copyright Act . . . ."). "If the suit is one brought to enforce a right based upon a contract which relates to a copyrighted production, the suit is one which arises out of the contract and is not one arising under the copyright statute, and the federal courts are without jurisdiction." *Dolch v. United California Bank* (9th Cir. 1983) 702 F.2d 178, 183 (citations omitted).

Duncan fails to address the cases cited in the moving papers which hold that state court judgments interpreting copyright agreements are binding. See *Siegel v. National Periodical Publications, Inc.* (S.D.N.Y. 1973) 364 F. Supp. 1032; *MCA Records, Inc. v. Charly Records* (C.D. Cal. 1994) 865 F. Supp. 649. Instead, Duncan merely argues that the collateral estoppel argument is frivolous because the state court judgment recites that it does not bind him. It is necessary to look behind that simple statement to determine its import. Sierra Club filed a demurrer to the state court complaint—arguing vigorously that Duncan was an indispensable or necessary party to any action which determined the validity of the Rights Agreement. Duncan was given an opportunity to be named as a defendant, and declined. Cohen/Peloton opposed the demurrer on the basis that Duncan was not a party to the Rights Agreement and was therefore was neither indispensable nor necessary. The state court overruled the demurrer, thus agreeing that Duncan was not a party to the Rights Agreement. Hasse Reply Dec. ¶ 3. So while the state court judgment may not bind him per se, it is binding with regard to its determination that Duncan is not a party to the Rights Agreement.

**C.    Even If Duncan Had Standing and This Court Had Jurisdiction Over the Copyright Claim, The Statute of Limitations Has Run**

Duncan does not, apparently, dispute that claims of copyright *ownership*, as distinct from *infringement*, accrue when a repudiation of ownership is communicated to the claimant, and are barred three years from the time of repudiation. *Zuill v. Shanahan* (9th Cir. 1996) 80 F.3d 1366, 1369. Instead, he argues that he "indisputably" owns the copyright. Oppo. 19:24-26. However, as discussed in *Silvers*, supra, 402 F.3d at 887, while Duncan may own the copyright to the novel, he does not own the movie rights. *Zuill* compels a finding that any claim to copyright ownership in the film rights is time barred. Without ownership, there can be no claim for infringement. *Ritchie v. Williams* (6th Cir. 2005) 395 F.3d 283, 289 (The first element of an infringement claim is ownership by the plaintiff) (citing 3 M. Nimmer & D. Nimmer, Nimmer on Copyright 12.05[C] (2004)).

Moreover, Duncan has not alleged any specific acts of infringement within the last three years. "A use of a copyrighted work is not an infringing act if such use does not fall within the scope of those rights expressly granted to the copyright proprietor. Thus, privately reading a literary work . . . constitutes use of a copyrighted work that does not infringe the rights granted to the copyright holder." Nimmer, supra, 8.01[A]; *Fortnightly Corp. v. United Artists Television, Inc.* (1968) 392 U.S. 390, 395. The rights of a copyright holder are rights of express enumeration as detailed in section 106 of the Act: reproduction, adaptation, distribution, performance, and display. Nimmer, supra. Duncan fails to allege that any rights he holds were infringed in the last three years. Duncan is time barred from bringing an ownership claim, and has not alleged, nor could he, anything amounting to infringement.

## IV.  DECLARATORY RELIEF IS NOT AVAILABLE TO MR. DUNCAN

Mr. Duncan fails to address, much less distinguish, the cases cited by defendants in support of their contention that he has no standing in the absence of threatened litigation and a present ability to proceed with his own film.  See cases Def. Memo. 16:15-18:12.

A party seeking a declaration regarding rights under the Copyright Act has standing to sue if he can show that he has a "'real and reasonable apprehension that he will be subject to liability'" under the Act.  *Hal Roach Studios, Inc. v. Richard Feiner & Co.* (9th Cir. 1989) 896 F.2d 1542, 1555.  Duncan does not assert that he has any "real and reasonable apprehension" that he will be subject to liability for copyright infringement. In the absence of such a showing, he has no standing upon which to seek declaratory relief under the Copyright Act.  *Sakkis v. Artisan Pictures, Inc.* (C.D. Cal. 2008) 2008 U.S. Dist. LEXIS 21724, 11-12.

## V.  THE FRAUD CLAIM FAILS UNDER BOTH 12(B)(6) AND § 425.16

### A.  The Fraud Allegations Are Simply False

A review of the evidence submitted by the Cohens here, and the complete lack of countervailing evidence from Duncan, mandate dismissal under the anti-SLAPP statute. "If plaintiff does not possess relevant, indispensable facts to state a fraud claim with particularity, precepts upon which Rules 9(b) and 11 are founded mandate that he has no business charging fraud on slim hope that he may use discovery to put meat on bare bones of his fraud claim; fraud is too serious a charge and litigation is too expensive to allow such tactics . . .." *Beck v Cantor, Fitzgerald & Co.* (1985, ND Ill) 621 F Supp 1547.

Duncan makes only three specific allegations of fraud against Cohen.

1. *Allegation:* Cohen offered Sierra Club an investment opportunity in April 1987 in order to extend the option without Duncan's approval.  Complaint ¶ 23, 24, 66.  *Fact:* In April

1987, the Rights Agreement was still in its originally contracted for second term. Even without the allegedly fraudulent extension, it would not have expired until October 1987. Complaint Ex. 1. Thus, even if Sierra Club had rejected the offer of a one year extension, Cohen still could have, and would have, exercised the option before its expiration. Cohen Reply Dec. ¶ 4. There is no false statement attributed to Cohen. The only statements at issue can be summarized as: "Do you, SCB, want to invest?" and "I'll pay you $2,000 to extend the option."

2. *Allegation:* Cohen created a sham budget in order to hold onto the film rights. Complaint ¶¶ 29, 31, 67. *Fact:* The prospectus shows that the film budget was anything but a sham. Not only was it very detailed, but the prospectus showed the involvement of more than a dozen experienced motion picture professionals, including a director and actors, who were involved in the production. Cohen Dec. ¶ 12, Ex. E (The prospectus or "investment opportunity" is referred to numerous times in the complaint--¶¶ 23, 24, 26, 28, 45, 51, 56, 60, 61, 66, 72, 76; Exhibits 4, 5, 6, 8, 9, 10, 11). Moreover, if the movie were to be made for less than $500,000,[1] as contemplated by ¶ 6B of the Rights Agreement, then Cohen overpaid the entire low budget exercise price by more than $8,000. Complaint, Ex. 12. If Cohen had intended to create a sham budget to hold onto the rights, he would have created a budget of under $500,000, and would owe no more money on commencement of photography, and could claim a $8,000 refund. There is absolutely no basis provided for the allegation of a "sham."

3. *Allegation:* Cohen promised to commence production by the summer of 1989. Complaint ¶ 68. *Fact:* Cohen made no such promise. His October 12, 1988 letter states only, and expressly, that he *hoped* to begin production then. Id., Ex. 12.

No amount of discovery can change these facts. There was no fraud. Moreover, Duncan has not alleged pecuniary damages. Witkin, California Procedure 4th, Pleading § 687. Without

---

[1] Even today it is possible to make a commercially viable movie for less than $500,000. See e.g. http://www.indigent.net/. Indigent makes such films as *Tadpole* (est. budget $150,000 starring Sigourney Weaver) and *Pieces of April* (est. budget $300,000 starring Patricia Clarkson).

1  more details, simply alleging a cloud on the title to the film rights does not covert this vague

2  allegation to pecuniary damages.  Oppo. 21:18-22.

### B. Mr. Duncan Did Not Personally Rely on Cohen's Representations

The only action taken by either Sierra Club or Duncan in response to Cohen's alleged fraud was to extend the option period for a year on payment of $2,000.  Duncan claims he relied on Sierra Club's assertion that he had no choice, but Cohen never made such an assertion.  Thus if there is reliance by Duncan, it is only to SCB's alleged fraud—not Cohen's.

Duncan's cites *Gawara v. United States Brass Corp.* (1998) 63 Cal. App. 4th 1341, 1349 for the theory that a fraud worked on an agent is sufficient to allow the principal to file suit.  But *Gawara* helps Cohen, not Duncan.  First, it reversed fraud judgments against defendants because plaintiffs failed to show actual reliance.  Second, *Gawara* cites The Restatement Second of Torts § 533 for the relevant principle here: "The maker of a fraudulent misrepresentation is subject to liability for pecuniary loss to another who acts in justifiable reliance upon it if the misrepresentation, although not made directly to the other, is made to a third person and the maker intends or has reason to expect that its terms will be repeated or its substance communicated to the other, and that it will influence his conduct in the transaction or type of transactions involved."  *Id.* at 1350.  Here, Cohen made an honest representation to Sierra Club: "I'll pay $2,000 if you extend the option for a year."  Sierra Club then made an alleged misrepresentation to Duncan that he had no choice but to accept the offer.  Complaint ¶ 28.  Duncan has not alleged, nor could he, that Cohen had reason to expect that SCB would tell Duncan he had no choice but to accept the offer.  The only thing Cohen expected SCB to covey was a $2,000 offer.  Duncan cannot file suit against Cohen where he did not rely on any statements made, directly or indirectly, by Cohen other than the truthful offer to pay $2,000.

### C. Duncan's Fraud Claim Is Time Barred Because He Knew of The "Sham" Budget 20 years Ago

Since the fraud claim relating to the statement "you have no choice but to go along with

the option extension" relates only to the Sierra Club, an analysis of the statute of limitations as to Cohen must focus only on statements relating to the "sham" budget and "promise" to commence production. Both of those statements were made by letter in October 1988. Duncan does not, nor (since he apparently cashed the check) could he, claim that he discovered those statements within the last three years. Duncan's fraud claim is untimely.

## VI.   THE CONSPIRACY CLAIM MUST BE DISMISSED

Without a fraud claim, Mr. Duncan's conspiracy claim cannot stand. There is no separate and distinct tort cause of action for civil conspiracy." *Entertainment Research v. Genesis Creative* (9th Cir. 1997) 122 F.3d 1211, 1228. Duncan is required to plead with specificity: 1) that SCB knew about Cohen's alleged scheme to defraud Duncan of his rights; 2) that SCB intentionally joined Cohen in this scheme and 3) that such intentional joinder was done for the purpose of injuring Duncan. *Kidron v. Movie Acquisition* (1995) 40 Cal. App. 4th 1571, 1582.

The complaint lacks each of these three required elements and must be dismissed.

## VII.   NOMINATIVE USE OF DUNCAN'S NAME IS APPROPRIATE

The Rights Agreement requires that Duncan's name be used in connection with the movie. But even if it did not, nominative use of his name is available to anyone. The web page at issue states in its entirety: "David James Duncan (author) is the author of the novel The Brothers K, which was developed by Imagine for director Ron Howard; and My Story as Told By Water, a 2001 finalist for the National Book Award." Ex. 15.

"Nominative use of a mark - where the only word reasonably available to describe a particular thing is pressed into service - lies outside the strictures of trademark law: Because it does not implicate the source-identification function that is the purpose of trademark, it does not constitute unfair competition; such use is fair because it does not imply sponsorship or endorsement by the trademark holder. 'When the mark is used in a way that does not deceive

1  the public we see no such sanctity in the word as to prevent its being used to tell the truth.'"
2  *New Kids on the Block v. News America Pub., Inc.* (9th Cir. Cal. 1992) 971 F.2d 302, 308
3  (citations omitted).  See also Cal. Civ. Code § 3344(e).  Here, the truth is that Duncan is the
4  author of The River Why and other books.  Use of his name is the only reasonable way to
5  truthfully describe the author of the novel on which the proposed movie is based.

  Dated:  June 6, 2008

   /s/  Lizbeth Hasse
  Lizbeth Hasse
  Creative Industry Law Group

  and

  Thomas A. Cohen
  Law Offices of Thomas A. Cohen

  Attorneys for the Cohen Defendants